MRS. LILLIAN ENSLEY HART v. QUEEN CITY COACH COMPANY AND MRS. ROBERT EMERSON FULTZ AND DR. ROBERT EMERSON FULTZ.

(Filed 14 January, 1955.)

**1. Process § 10—**

The finding of the trial court that defendants were nonresidents on the date of the automobile collision in suit, and were, therefore, subject to service under G.S. 1-105, is conclusive on appeal if such finding is supported by evidence.

**2. Same—**

The broad purpose of G.S. 1-105 is to enable a resident motorist to bring a nonresident motorist, who would otherwise be beyond this jurisdiction by the time suit could be instituted, within the jurisdiction of our courts to

answer for a negligent injury inflicted while the nonresident was using the highways of this State.

**3. Same—Member of Armed Services does not acquire residence here solely because stationed here for period under military orders.**

The evidence tended to show that a member of the Armed Services, accompanied by his wife, was stationed in this State under military orders at the time of the accident in suit, that prior to his entry into service he was a resident of another state, and that at the time of the service of summons he and his wife had moved to another state incident to his orders, without evidence that they were in this State for any purpose other than that contemplated by his military service or that they ever formed any intention of making this State their place of residence, *is held* sufficient to support the trial court's finding of fact that at the time of the accident they were nonresidents so as to subject them to service of summons under G.S. 1-105.

APPEAL by cross-action defendants, Fultz, from *Gwyn, J.,* September Civil Term, 1954, DAVIDSON.

The plaintiff instituted a civil action in the Superior Court of Davidson County against the Queen City Coach Company for personal injuries sustained by her in a bus accident that occurred on 4 January, 1954, in Onslow County. The Queen City Coach Company filed an answer and cross-action against Mrs. Robert Emerson Fultz and Dr. Robert Emerson Fultz, alleging the automobile negligently operated by them ran into the bus, causing it to turn over, injuring the plaintiff, and asking that Dr. and Mrs. Fultz be made parties defendant.

The Clerk Superior Court of Davidson County entered an order making Dr. and Mrs. Fultz parties defendant. Upon failure to obtain personal service in Onslow County, service of the summons, copies of the complaint and answer, and cross-action of the Queen City Coach Company was made on the Commissioner of Motor Vehicles. Dr. and Mrs. Fultz entered a limited or special appearance and moved to dismiss the service upon the ground that they were at the time of the accident residents of the State of North Carolina. Affidavits were filed by the Coach Company and by Dr. and Mrs. Fultz, setting forth in substance the following:

Dr. Fultz is a native of Dinwiddie County, Virginia. He had voted an absentee ballot in that county in 1943. He had never voted or registered for any election elsewhere. Mrs. Fultz is a native of South Carolina. She has never registered or voted in any election. From the time of their marriage until 10 July, 1947, they resided in Dinwiddie County, Virginia. On that date Dr. Fultz entered upon active duty as an officer in the United States Navy. Some time prior to 17 November, 1952 (date not given), Dr. Fultz was assigned to active duty at Camp Lejeune, near Jacksonville, North Carolina. He remained on active duty there until nine days after the accident, when he was transferred to Ports-

mouth, Virginia, where he was on duty at the time process was served on the Commissioner of Motor Vehicles. His entire stay in North Carolina was incident to naval orders. Mrs. Fultz moved with him to North Carolina and returned with him to Virginia. They filed a joint federal income tax return with the director for the collection district of North Carolina for the taxable year 1952, and for the year 1953 they filed a like return with the director for the collection district of Virginia.

Upon the hearing, Judge Gwyn found facts in substance as recited above, and concluded as a matter of law that Dr. and Mrs. Fultz were nonresidents of the State of North Carolina at the time of the accident; that they were using the highways of North Carolina, and that the service on the Commissioner of Motor Vehicles was legal service and brought the defendants into court. Dr. and Mrs. Fultz excepted and appealed.

*Carpenter & Webb* for *Dr. and Mrs. Fultz, appellants.*
*Shearon Harris; Walser & Brinkley, by Don A. Walser, for plaintiff, appellee.*

HIGGINS, J. The critical question presented by this appeal is whether the record presents evidence to support the findings of Judge Gwyn that the appealing defendants were nonresidents of North Carolina on 4 January, 1954, the date of the accident, and could be brought into court by service on the Commissioner of Motor Vehicles under G.S. 1-105. If there is supporting evidence, we are bound by the findings. *Bigham v. Foor*, 201 N.C. 14, 158 S.E. 548.

The briefs in this case on the question of residence are full and have been prepared with much care. We have examined the many cases cited. They arise under many different statutes, each enacted to accomplish a definite purpose. It is to be expected, therefore, that the holdings as to what constitutes residence, domicile, etc., vary according to the purposes of the statutes.

What constitutes nonresidence under G.S. 1-105 has not been the subject of direct judicial review. The nearest approach is *Bigham v. Foor, supra*. The broad purpose of the statute is to enable an injured resident of this State to bring back to answer for his tort a nonresident motorist who has inflicted injury while using the State highways and by the time suit can be instituted would otherwise be beyond this jurisdiction. It is contemplated that a resident of the State would ordinarily have enough of permanence and of fixed abode to keep him here and to permit personal service.

Residence has certainly in contemplation something of choice, of intention to remain permanently, or for a time sufficient to accomplish some undertaking requiring more than a brief period. How does the service-

man fit into this picture? It must be remembered he moves under orders and not from choice. It is not for him to say when or where he goes, or how long he stays when he gets there. Often, the first intimation of reassignment is the delivery of his movement orders. Can it be said he acquires a residence under such circumstances?

The impermanence of a soldier's or sailor's assignment is illustrated by a provision of the Soldiers and Sailors Civil Relief Act of 1940, 50 U.S.C.A., War Appendix, Sec. 574, a wartime measure which provided: ". . . such person shall not be deemed by reason of compliance with military or naval orders to have become a resident in or resident of any other state, territory, possession or political subdivision of any of the foregoing . . . and personal property shall not be deemed to be located or present in, or to have a *situs* for taxation in such state, territory, . . ." etc.

Our view that members of the Armed Services stationed in this State under military or naval orders do not acquire residence here is supported by a recent decision of the Supreme Court of Arkansas, in the case of *Central Manufacturers' Mut. Ins. Co. v. Friedman,* 209 S.W. 2d 102. In that case the Court said, referring to an officer in the military service: "He did not intend to change his domicile or residence and had made no change unless his military service alone brought about such a change. In the circumstances here, Benno's military service did not bring about any change in his domicile or residence." . . . "In the Conflict of Laws, vol. 1, page 155, Professor Beale discusses the 'domicile of a soldier or sailor' and the capacity of a sailor or soldier to acquire a 'residence' notwithstanding his service in the Army or Navy, and it was there said: 'It is, of course, possible for him (soldier) to provide a house of his own, off the Post, where his family may live, if this is allowed by superior officers; and it is possible for him to change his domicile by the proper proceedings while on leave. But he cannot acquire a domicile in an Army Post.' . . . " 'He is as able as anyone to acquire a new domicile so far as conditions allow. He cannot acquire it by any act done under military orders since, as has been seen, he has no choice but obedience. His orders would, so long as he remained in the Army, be enforced by all the powers of the state, and if he were permitted to leave the Army he could no longer remain in the Army quarters. He may, however, like anyone else, change his domicile by acquiring a residence outside an army post with the intention of making it his home.'

" 'The domicile of a soldier or sailor in the military or naval service of his country generally remains unchanged, domicile being neither gained nor lost by being temporarily stationed in the line of duty at a particular place, even for a period of years. A new domicile may, however, be acquired if both the fact and intent concur.' " . . . "Here, there is no

evidence that Benno acquired a residence outside of the Army Post with the intention of making it his home."

There is no suggestion in the record that either Dr. or Mrs. Fultz were in North Carolina for any purpose other than that contemplated by his naval service, or that they ever formed any intention to make North Carolina their place of residence. Dr. Fultz came to North Carolina under naval orders. He left under orders, and his entire stay here was incident to his naval orders. The evidence in the record is sufficient to support Judge Gwyn's findings of fact, and the findings are sufficient to sustain his conclusion that the appealing defendants were properly served with process by the delivery of same to the Commissioner of Motor Vehicles in compliance with G.S. 1-105.

The judgment of the Superior Court of Davidson County is
Affirmed.