## FRANK LEE ISRAEL v. MAXINE FAYE ISRAEL.

### (Filed 27 September, 1961.)

**Divorce and Alimony § 1:   Domicile § 1:   Army and Navy—**

Evidence tending to show that plaintiff in a divorce action was born and raised in a municipality of this State and lived here until inducted into the army, that he continued to regard this State as his domicile while stationed in many states and in a foreign country under military orders, that while on leave he made his "headquarters" at his mother's home in this State, *is held* to support an instruction that plaintiff's home remained in this State unless he had intended to make some other state his home permanently or for an indefinite period, and supports the jurisdiction of the court over the action, notwithstanding the marriage was contracted in another state.

APPEAL by defendant from *Campbell, J.,* at May 1961 Civil Term of BUNCOMBE.

Civil action for divorce on the grounds of two years separation.

Plaintiff, in his complaint, filed on 9 July 1960, alleges among other things: (1) That he is and has been for more than six months next preceding the commencement of this action, a citizen and resident of Buncombe County, North Carolina; (2) that plaintiff and defendant were lawfully married 26 October 1952; (3) that plaintiff and defendant separated without any fault on his part, on 23 December 1956, and have continuously lived separate and apart since then; and (4) that one child was born of the marriage, which child has been and shall continue to be supported by plaintiff.

Wherefore, plaintiff prays for an absolute divorce.

Defendant, answering, admits the existence of the marriage and the birth of one child, and denies the other material allegations of the complaint including plaintiff's allegation of residence in North Carolina for six months next preceding the commencement of the action.

As a further answer and defense, defendant alleges that plaintiff wrongfully and unlawfully abandoned her and their minor child without provocation and without securing to them adequate support.

Wherefore defendant prays that the divorce be denied and that plaintiff be ordered to pay adequate support for herself and their minor child.

At the trial plaintiff offered evidence tending to show, among other things, that he was born and raised at Candler in Buncombe County, North Carolina; that he went to grammar school and high school there, and graduated from Candler High School in 1941; that he has been in the Army 19 years, and has had no other home except Buncombe County; that he married the defendant in October, 1952, in Arkansas and has been in the Army since then; that he was stationed in Colorado at the time of the marriage, then in Oklahoma, and then in Kentucky, and that his wife would not join him at these places; that plaintiff was transferred to Germany in May, 1956, and took with him the defendant and her minor daughter; that the family lived together there in a three-bedroom apartment which was provided by the Army, and which had a modern kitchen and all the utilities, "very, very nice"; that he helped in the home and provided a maid for a short time; that he provided his wife with an automobile which was at her disposal "24 hours a day"; that defendant remained in Germany about seven months and returned to the United States on 23 December 1956; that plaintiff didn't know "under what circumstances my wife left at that time." In his language, "she just * * * she just wanted to come home. She didn't give me no excuse at all. I had at this time been providing support * * * I did not ask my wife to leave Germany * * * When I came home from the field she had called her folks in Oklahoma wanting to come home. At that time I had not done nothing, not used any physical force on my wife;" that plaintiff did not have enough money to send defendant home, but that her parents agreed to give her the money with plaintiff's approval; that he finally gave his approval; that from 23 December 1956, until the present, plaintiff has not resumed marital relations with defendant; that when they were married, plaintiff took out an allotment for defendant and her minor daughter of $157.00 per month, which was increased to $176.90 after their minor son was born; that the allotment has never been stopped and is still being received by defendant; that plaintiff was transferred in April, 1960, from Germany to Fort Ord, California, where he is presently stationed; that since April, 1960, plaintiff has had twenty days leave from the Army, which time he spent visiting his mother in North Carolina; that "I (plaintiff) made a decision regarding my future married life after my wife left me. When she left me in Germany, I told her I wouldn't live with her no more"; that in August, 1960, at Fort Ord in the presence of

the Army Chaplain, plaintiff again told defendant that he would not live with her any more; that plaintiff sent $600 to defendant after she left Germany and has continued to provide her with a Class Q allotment; that when and if plaintiff retires from the Army, he expects to come back to North Carolina to live. "It is my home; I was born and raised here. I don't have any other place to go besides my mother's home at Candler."

Plaintiff further offered as evidence the testimony of Mrs. Lillie Israel which tended to show, among other things, that she lives at Candler, Route #3, and is the mother of Sergeant Frank Israel; that when defendant returned from Germany in 1956 or 1957, she spent a week at the witness' house; that defendant told the witness that she was not going back, that she didn't like it and didn't want to live there; that defendant made no statement about not being supported by plaintiff; that defendant didn't speak well of plaintiff; that when plaintiff is on leave he makes his headquarters at the witness' house; that "he visits the family and goes from one place to the other, but usually headquarters is my home, his home"; that plaintiff has a room at the witness' house which is always ready for him.

At the close of plaintiff's evidence, defendant moved for judgment as of nonsuit. The motion was denied and defendant excepts, and, thereupon, defendant introduced evidence tending to rebut plaintiff's evidence and tending to support her contentions.

At the close of all the evidence, the court submitted the case to the jury upon these issues, which were answered as shown:

"1. Were the plaintiff and the defendant married as alleged in the complaint? Answer: Yes.

"2. Was the plaintiff a resident of the State of North Carolina at the time of the institution of the action and had he been a resident of said State for more than six months prior to the commencement of the action? Answer: Yes.

"3. Have the plaintiff and the defendant lived separate and apart continuously for more than two years next preceding the institution of this action, as alleged in the complaint, with the intention to cease cohabitation as man and wife? Answer: Yes.

"4. If so, was the separation caused without fault of plaintiff? Answer: Yes (we do not think it was the plaintiff's fault).

"5. Did the plaintiff wrongfully and unlawfully abandon the defendant and their minor child, without securing to them adequate support, as alleged in the defendant's answer? Answer: No."

To judgment in accordance therewith defendant excepts and appeals to Supreme Court, and assigns error.

*James S. Howell for plaintiff appellee.*
*William J. Cocke for defendant appellant.*

WINBORNE, C.J.   The defendant makes numerous assignments of error. This is the pivotal one: Did the trial court err in instructing the jury as a matter of law that unless plaintiff did intentionally change his home and intend to make some other State his permanent home for an indefinite period of time or for a permanent length of time, that his residence would remain in North Carolina even though he may have been in Korea or various other localities? We think the answer is No.

In *Martin v. Martin,* 253 N.C. 704, 118 S.E. 2d 29, *Moore, J.,* speaking for the Court said, quoting in part as follows: "Jurisdiction in divorce actions is conferred by statute. The requirement that one of the parties to a divorce action shall have resided in the State for a specified period of time next preceding the commencement of the action is jurisdictional. If the element of residence is lacking the court has no jurisdiction to try the action or grant a divorce. *Henderson v. Henderson,* 232 N.C. 1, 9, 59 S.E. 2d 227; *Ellis v. Ellis,* 190 N.C. 418, 421, 130 S.E. 7. In an action for divorce 'The plaintiff shall set forth in his or her complaint that the complainant or defendant has been a resident of the State of North Carolina for at least six months next preceding the filing of the complaint * * * .' G.S. 50-8.

" ' * * * To establish a domicile there must be a residence, and the intention to make it a home or to live there permanently or indefinitely. *S. v. Williams,* 224 N.C. 183 (1944), 29 S.E. 2d 744.' *Bryant v. Bryant,* 228 N.C. 287, 289, 45 S.E. 2d 572 (1947).

" * * * In *Williams v. North Carolina,* 325 U.S. 226, 229 (1945), it is said: 'Under our system of law, judicial power to grant a divorce—jurisdiction, strictly speaking—is founded on domicil. *Bell v. Bell,* 181 U.S. 175; *Andrews v. Andrews,* 188 U.S. 14. The framers of the Constitution were familiar with this jurisdictional prerequisite, and since 1789 neither this Court nor any other court in the English-speaking world has questioned it. Domicil implies a nexus between persons and place of such permanence as to control the creation of legal relations and responsibilities of the utmost significance. The domicil of one spouse within a State gives power to that State, we have held, to dissolve a marriage wheresoever contracted.'

" 'In a strict legal sense that place is properly the domicil of a person where he has his true permanent home and principal establishment, and to which he has, whenever he is absent, the intention of returning, and from which he has no present intention of moving.' 17A Am. Jr., Domicil, S. 2, pp. 194-5."

And in *Hart v. Coach Co.*, 241 N.C. 389, 85 S.E. 2d 319, *Higgins, J.*, quotes with approval from *Central Manufacturers Mut. Ins. Co. v. Friedman*, 209 S.W. 2d 102 (Ark.) as follows: "The domicile of a soldier or sailor in the military or naval service of his country generally remains unchanged, domicile being neither gained nor lost by being temporarily stationed in the line of duty at a particular place, even for a period of years. A new domicile may, however, be acquired if both the fact and the intent concur." See also: 19 C.J. 418; 17A Am. Jur. Domicile, S. 40, p. 227; *Trigg v. Trigg*, 226 Mo. App. 284, 41 S.W. 2d 588; *Kennedy v. Kennedy*, 205 Ark. 650, 169 S.W. 2d 876.

Thus it appears that the charge was presented to the jury correctly and free of error.

Moreover, all assignments of error brought forth by defendant have been given consideration and fail to show cause for disturbing the decision reached in the court below.

In the judgment below there is

No error.