HARLEY GARY HOLLAND v. ELIZABETH ANN HOLLAND

No. 8130DC400

(Filed 16 Feburary 1982)

**1. Divorce and Alimony § 23.3; Infants § 5 — child residing in another state — jurisdiction of child custody action**

There was not available in this State substantial evidence relevant to a child's present or future care, protection, training, and personal relationships so as to give the Jackson County District Court jurisdiction under G.S. 50A-3(a)(2) to determine custody of the child where the child has resided with its father in Georgia since it was five years old; at the time of the hearing, the child was eleven years old; the child had only briefly visited Jackson County; the mother had only sparse contacts with the child during the previous six years; persons named by defendant mother as being able to give evidence could not give substantial evidence as to the child's present life interests or needs; and it appears that the requisite evidence could only be given by persons or sources in the community in which the child has lived and begun to grow up.

**2. Divorce and Alimony § 23.3; Infants § 5 — child residing in another state — jurisdiction of child custody action — substantial evidence**

The quality of evidence required for the court to enter a child custody order under G.S. 50A-3(a)(2) goes beyond the standard of "more than a scintilla" or "any competent evidence"; rather, the "substantial evidence" required by the statute must be such as would enable the trial court to look to sources within the State that could address each of the statutory aspects of the child's interests, care, protection, training and personal relationships.

APPEAL by plaintiff from *McDarris, Judge.* Order entered 28 November 1980 in District Court, JACKSON County. Heard in the Court of Appeals 20 November 1981.

Defendant filed a motion in the cause, seeking custody of a minor son born of her marriage to plaintiff. Plaintiff appeared specially and moved to dismiss, asserting a lack of jurisdiction in the trial court. Following a hearing at which the trial court heard only the testimony of defendant, the Court entered an order concluding that the trial court should assume jurisdiction and hear the case on its merits. Plaintiff has appealed.

*Holt, Haire & Bridgers, P.A., by Ben Oshel Bridgers, for plaintiff-appellant.*

*Raymond D. Large, for defendant-appellee.*

Holland v. Holland

WELLS, Judge.

[1] This matter involves an interpretation of North Carolina's Uniform Child Custody Jurisdiction Act, G.S. 50A-1, *et seq.* We find that the crucial jurisdictional requirements in the Act are not present in this case and reverse. The pertinent portions of the Act are:

G.S. 50A-1. (a) The general purposes of this Chapter are to:

(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(3) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and the child's family have the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available, and that courts of this State decline the exercise of jurisdiction when the child and the child's family have a closer connection with another state;

G.S. 50A-3. (a) A court of this State authorized to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this State because of the child's removal or retention by a person claiming the child's custody or for other reasons, and a parent or person acting as parent continues to live in this State; or

(2) It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and the child's parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence relevant to the child's present or future care, protection, training, and personal relationships; or

(3) The child is physically present in this State and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(4) (i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

The evidence before the trial court consists of plaintiff's verified complaint in the original cause, defendant's and plaintiff's motions in the cause relating to this case, and the testimony of the defendant-mother of Gary Dale Holland. This evidence tends to show the following circumstances and events relevant to the custody of Gary Dale. Two children were born of the marriage of plaintiff and defendant: Gary Dale, born 5 May 1969 and Annette Elaine, born 2 November 1971. Plaintiff and defendant were separated on 25 November 1971 and judgment of divorce was entered 5 January 1972. Custody of the children was not provided for in the divorce decree, the parties having agreed that defendant would have custody of the children. During the latter part of the summer of 1974, plaintiff moved to Griffin, Georgia and took Gary Dale with him. In October, 1974, defendant moved to New Bern, North Carolina where she lived until September, 1976 when she returned to live in Jackson County. Plaintiff has continued to live in Georgia with Gary Dale since the late summer of 1974. Defendant did not visit Gary Dale nor did he visit her from late summer of 1974 until the fall of 1976, when defendant went to Georgia to visit Gary Dale. There was evidence that Gary Dale has made one

visit, with his father, to Jackson County since 1974. Plaintiff's mother, father, brother, and sister live in Jackson County.

Defendant testified that "the biggest majority" of her relatives live in Jackson County. She testified that there were eleven named persons in Jackson County who knew her, knew her when Gary Dale lived with her, were familiar with her home, and could testify as to her fitness as a parent. None of these named persons testified. Defendant also testified that the Jackson County Department of Social Services had investigated her home quite a few times within the past three years. Defendant remarried in 1974 and was divorced in 1978. Defendant has lived in Jackson County since the fall of 1976.

The trial court concluded that Georgia is the "home state of Gary Dale; that defendant has significant connections with North Carolina; and that plaintiff has significant connections with North Carolina. These conclusions are supported by the evidence and are not at issue.

The trial court also concluded that there is available in North Carolina substantial evidence relevant to Gary Dale's past, present and future care, protection, training, and personal relationships. The findings of fact upon which that conclusion is based are not supported by the evidence.

At the time he moved with his father to Georgia, Gary Dale was five years old. At the time of the hearing, Gary Dale was eleven years old. During that six year interval, Gary Dale had only briefly visited Jackson County. It thus appears that evidence of his life style, home environment, neighborhood environment, progress in school, and the conditions of his health, both with respect to the present and future, could only come from persons or sources in the community where he has lived and begun to grow up. Gary Dale's contacts with his mother during the previous six years were so sparse as to make it obvious that she could not give substantial evidence as to his present care, training, and personal relations. Even more obvious is the fact that those persons defendant named as being available to give evidence could not give substantial evidence as to Gary Dale's present life interests, or needs. Defendant's lack of detail as to her own relationship with the persons she named as available witnesses make it questionable as to whether they could give substantial evidence as to Gary Dale's future care, training, protection, and personal relations. The record is void of any substan-

tial evidence from defendant, reflecting only defendant's bare assertion that she could provide some testimony as to her own situation. Although the trial court found that the Jackson County Department of Social Services had conducted investigations and prepared reports as to the home life of defendant, this finding is based only upon defendant's statement to the court that the Agency had investigated her home and had made no negative findings. This finding is immaterial to the issue of Gary Dale's welfare.

[2] Jurisdiction in this case could not be grounded except under G.S. 50A-3(a)(2). The test there is twofold, requiring both a significant parental connection with this state *and* substantial evidence available in the state as to *present* or *future care, protection, training, and personal relationships*.[1] We hold that the quality of evidence required under this section of the statute goes beyond the standard of "more than a scintilla" or "any competent evidence". *See State v. Smith*, 40 N.C. App. 72, 252 S.E. 2d 535 (1979). To be able to enter a well-founded custody order, the trial court must look beyond the declarations of competing parents, seeking to find the real circumstances of the child's welfare. The "substantial" evidence required by the statute, therefore, must be such as would enable the trial court to look to sources within the state that could address each of the statutory aspects of the child's interest, care, protection, training, and personal relationships. *See Davis v. Davis*, 53 N.C. App. 531, 281 S.E. 2d 411 (1981); *Green v. Green*, 87 Mich. App. 706, 276 N.W. 2d 472 (1978); *Theresa H. v. Pasquale G.*, 102 Misc. 2d 759, 424 N.Y.S. 2d 652 (1980); *compare Etter v. Etter*, 43 Md. App. 395, 405 A. 2d 760 (1979); *see also* Ratner, "Child Custody in a Federal System", 62 Mich. L. Rev. 795 (1964).

This case provides a clear example of what the Act was intended to prevent: forum shopping for the convenience of competing parents to the detriment of the real interest of the child.

Defendant did not establish any of the jurisdictional requirements of the Act.

---

1. *Although plaintiff did not follow the precise requirements of App. R. in seeking to preserve for our review the findings of fact and conclusions of law argued in his brief, his exceptions to the judgment preserves for our review, pursuant to Rule 10(a), the question of whether the trial court had subject matter jurisdiction.*

The order of the trial court is

Vacated.

Judges ARNOLD and MARTIN (Harry C.) concur.