ALLEN G. HART v. VERONICA M. HART

No. 844DC272

(Filed 2 April 1985)

1. **Rules of Civil Procedure § 32— deposition admissible as substantive evidence —offered only for corroboration—admitted only for corroboration**

    There was no error in admitting depositions of Florida residents for corroborative purposes only, even though they qualified for admission as substantive evidence under G.S. 1A-1, Rule 32 (1983), where they were only *offered* for corroborative purposes.

2. **Divorce and Alimony § 23.9— child custody—letters—admission harmless error**

    In a child custody dispute in which the date on which the children were moved from North Carolina to Florida was in issue, letters from the wife's father in Florida suggesting that the children first left North Carolina on 30 December 1982 were inadmissible for corroboration and improperly formed the basis for a substantive finding of fact; however, the admission of the letters was harmless error because the children's presence in North Carolina in the fall of 1982 was substantiated by the testimony of three other competent witnesses.

3. **Divorce and Alimony § 23— child custody—ex parte determination of jurisdiction in North Carolina—proper**

    The trial court correctly found in an *ex parte* child custody order that North Carolina had been the children's home state for the six months before the commencement of the proceeding where the allegations of the complaint satisfied the home state rule in that North Carolina "had been the children's home state within six months before commencement of the proceeding," the children were absent from the State "for other reasons," and the husband "continues to live in this State." G.S. 50A-3(a)(1)(ii) (1984).

1

Hart v. Hart

**4. Divorce and Alimony § 23— child custody—residence of husband in North Carolina—evidence sufficient**

In a child custody dispute in which jurisdiction was in issue, the serviceman husband's testimony that he considered himself a North Carolina resident, though equivocal, was sufficient to satisfy the requirement that a parent or person acting as parent reside in this state. The "domicile" jurisdictional requirement for divorce is not applicable to child custody actions under Chapter 50A.

**5. Divorce and Alimony § 23.9— child custody—findings supporting jurisdiction in North Carolina**

The trial court correctly concluded that it had jurisdiction over a child custody action where there was competent evidence to support findings that the children had lived in North Carolina from July 1981 until December 1982; that the wife had removed the children on 30 December 1982 without the consent, desire or knowledge of the husband; and that North Carolina was the home state. G.S. 50-3(a)(1) (1984).

**6. Divorce and Alimony § 23— child custody—jurisdiction in North Carolina—findings that one parent has a significant connection with North Carolina**

The evidence and findings were sufficient to conclude that the children and at least one parent in a child custody dispute have a significant connection with North Carolina and that substantial evidence relevant to the children's present or future care, protection, training, and personal relationships is available in this state where the trial court found that the children had lived in North Carolina with their parents from July 1981 through December 1982. G.S. 50A-3(a)(i) and (ii).

**7. Divorce and Alimony § 23.6— child custody—North Carolina convenient forum**

The trial court did not abuse its discretion in finding that North Carolina was a convenient forum for a child custody determination under G.S. 50A-7 (1984).

**8. Divorce and Alimony § 23— child custody—jurisdiction in North Carolina proper—Florida action filed one day after North Carolina action**

The North Carolina trial court did not err in assuming jurisdiction in a child custody matter where the wife's action was filed in Florida the day after the husband filed his action in North Carolina. G.S. 50A-6(a) (1984).

APPEAL by defendant from *Henderson, Judge,* and *Cameron, Judge.* Orders entered 17 March and 1 December 1983 in District Court, ONSLOW County. Heard in the Court of Appeals 15 November 1984.

*Van Camp, Gill & Crumpler, P.A., by Sally H. Scherer, for defendant appellant.*

*Bell and Pittman, by Hiram C. Bell, Jr., for plaintiff appellee.*

---
**Hart v. Hart**
---

BECTON, Judge.

This is an interstate child custody jurisdictional dispute involving a husband stationed with the military in North Carolina and a wife who is presently living in Florida with the parties' two minor children at her parents' home.

The parties were raised in Florida and married there in February 1977. Although the husband was stationed with the military, first in Tennessee and then in North Carolina, the parties maintained their Florida drivers' licenses, car and voter registration. Their two children were born in Tennessee in 1977 and 1980. While the husband was stationed in Tennessee, the parties separated for approximately one year. During the separation, the wife and the two children lived with her parents in Florida. In the summer of 1981 the wife and children joined the husband in North Carolina. The family lived together in North Carolina until August 1982, when the husband left for active duty on Okinawa. Sometime after the husband's departure the two children were sent to live with their maternal grandparents in Florida. According to the wife, the children have lived in Florida since the end of August 1982. According to the husband, the children did not move to Florida until 30 December 1982. It is uncontroverted that the wife returned to Florida after the fall school semester. In any event, the wife and children were no longer in North Carolina when the husband returned from Okinawa in March 1983.

On 17 March 1983 the husband filed a verified Complaint asking the trial court to grant him temporary and permanent custody of the parties' two children, a divorce from bed and board, ownership of the parties' mobile home and personal property and injunctive relief. The same day, 17 March 1983, the trial court issued an *ex parte* temporary child custody order, awarding the husband custody of both children. On 6 April 1983 the wife moved to dismiss the action for lack of personal and subject matter jurisdiction. In support of her motion the wife submitted an affidavit stating that an action for divorce, child custody, child support and alimony, filed 18 March 1983, was pending in Florida. A hearing on the wife's motion to dismiss was held in October 1983.

From the trial court's 17 March 1983 *ex parte* order and its 1 December 1983 order, asserting jurisdiction "for all purposes," the wife appeals.

## I

On appeal the wife assigns error to several of the trial court's evidentiary rulings in addition to its rulings on personal and subject matter jurisdiction.

## II

*Evidentiary Rulings*

### A.

[1] Due to a medical problem the wife was unable to attend the hearing on her motion to dismiss. The wife's sole witness, her father, Joseph Bobba, testified that he had driven the children to Florida from North Carolina in late August 1982. Her attorney offered the depositions of seven Florida residents, attesting that the children had lived in Florida continuously since the end of August 1982. The wife contends that the trial court erred in admitting the depositions for corroborative purposes only, rather than as substantive evidence. For the following reasons, we disagree.

Generally, depositions of witnesses who are more than 100 miles from the hearing may be used as substantive evidence as long as the opposing party was present or represented at the taking of the deposition or had reasonable notice thereof. N.C. Gen. Stat. Sec. 1A-1, Rule 32 (1983). There is no question that the wife's depositions qualified under Rule 32 as substantive evidence. However, it is clear from the record that the depositions were only *offered* for corroborative purposes. Therefore, the trial court did not err in admitting them for corroborative purposes only.

### B.

[2] After the wife's father had testified that he took the children to stay with him in Florida in late August 1982, the husband gave conflicting testimony about telephone calls he had made to the children in North Carolina during the fall of 1982. In an effort to corroborate his own testimony, the husband introduced the contents of two letters he had received from the wife's father while the husband was on Okinawa. The letters suggested that the children first left North Carolina on 30 December 1982. The wife asserts that the trial court erred in admitting the two letters for corroborative purposes and then finding as facts:

that the [husband] received various letters and correspondence from the [wife's] father, Mr. Joseph C. Bobba, indicating that Mr. Bobba picked up the minor children on December 30, 1982 from the [wife] and that they have resided in the State of Florida since December 30, 1982.

We agree that the letters were inadmissible for corroborative purposes and further, that they improperly formed the basis for a substantive finding of fact. We, nevertheless, find the error harmless considering the weight of the other evidence presented.

Although the letters were admissible to impeach the wife's father's testimony, they were not admissible as corroborative evidence. *See State v. Mack*, 282 N.C. 334, 193 S.E. 2d 71 (1972) (prior inconsistent statements relating to material facts /may be proved by others without first laying foundation on cross-examination). "[E]xtrajudicial declarations of someone other than the witness purportedly being corroborated" are not admissible to corroborate the witness unless they come within an exception to the hearsay rule, or unless they are not hearsay, under the circumstances. 1 H. Brandis, *North Carolina Evidence* Sec. 52, at 196 & nn. 67-70 (2d rev. ed. 1982). The contested letters fit neither of the above categories—a hearsay exception or non-hearsay. Thus, they were inadmissible as corroborative evidence. The error is harmless though because, in addition to the husband's own testimony, the children's presence in North Carolina in the fall of 1982 was substantiated by the testimony of three other competent witnesses. *See Wilson County Bd. of Educ. v. Lamm*, 276 N.C. 487, 173 S.E. 2d 281 (1970).

### III

*Jurisdiction*

Finally, the wife contends that the trial court erred in entering the 17 March 1983 *ex parte* custody order and in assuming jurisdiction in the 1 December 1983 order, to determine permanent custody, when it lacked subject matter jurisdiction and personal jurisdiction over the nonresident wife. We are not persuaded. We conclude that the trial court correctly assumed jurisdiction in this matter.

The jurisdiction of the courts of this State to make child custody determinations is controlled by N.C. Gen. Stat. Sec. 50A-3

(1984), the jurisdiction provision of the Uniform Child Custody and Jurisdiction Act (UCCJA). *See* N.C. Gen. Stat. Sec. 50-13.5(c) (2) (1984). G.S. Sec. 50A-3(a) provides four alternative bases for jurisdiction:

(1) This State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this State because of the child's removal or retention by a person claiming the child's custody or for other reasons, and a parent or person acting as parent continues to live in this State; or

(2) It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and the child's parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence relevant to the child's present or future care, protection, training, and personal relationships; or

(3) The child is physically present in this State and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(4) (i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

Once the trial court has gained jurisdiction by establishing one of the above bases, it may enter an *ex parte* order for temporary custody prior to service of process or notice, "[i]f the circumstances of the case render it appropriate." G.S. Sec. 50-13.5 (d)(2) (1984); *Story v. Story*, 57 N.C. App. 509, 291 S.E. 2d 923 (1982).

Significantly, " 'home state' means the state in which the child immediately preceding the time involved lived with the

child's parents, a parent, or a person acting as parent, for at least six consecutive months. . . ." N.C. Gen. Stat. Sec. 50A-2(5) (1984). Personal jurisdiction over the nonresident parent is not a requirement under the UCCJA. Garfield, *Due Process Rights of Absent Parents in Interstate Custody Conflicts*, 16 Ind. L. Rev. 445 (1983); Comment, 34 Mercer L. Rev. 861 (1983).

In its 17 March 1983 *ex parte* order the trial court concluded that it had jurisdiction over "the custody matter," the children and the parties. Based on the verified Complaint and the arguments of plaintiff's counsel, the trial court found that North Carolina satisfied two of the jurisdictional bases: the home state rule, G.S. Sec. 50A-3(a)(1), and the significant connection test, G.S. Sec. 50A-3(a)(2). After hearing evidence from the parties at the hearing on the motion to dismiss for lack of jurisdiction, the trial court in its 1 December 1983 order, found the identical alternative bases for jurisdiction—the home state rule and the significant connection test. We find competent evidence to support these findings in both instances.

A. *The Home State Rule*

[3] In the verified Complaint the husband alleged that the children had lived in North Carolina from July 1981 until January 1983. Further, he alleged that he and his wife were residents of this State for more than six months preceding the institution of this action. And he alleged that the children had lived in North Carolina with both parents from July 1981 until September 1982, then with the mother from September 1982 until January 1983. Moreover, he alleged that both children were presently in the custody of the wife's parents in Florida. The father filed this action on 17 March 1983. Therefore, the allegations of the Complaint satisfy the home state rule, G.S. Sec. 50A-3(a)(1)(ii) (1984): North Carolina "had been the children's home state within six months before commencement of the proceeding"; the children were absent from this State "for other reasons"; and the husband "continues to live in this State." The trial court, in its *ex parte* order, correctly found that North Carolina "had been the [children's] home state within six (6) months before commencement of the proceeding" based on the evidence before it. *See Plemmons v. Stiles*, 65 N.C. App. 341, 309 S.E. 2d 504 (1983) (child's 15 months continuous presence in North Carolina—home state).

[4] At the subsequent hearing on the wife's motion to dismiss for lack of jurisdiction, the husband testified that he was with the military. Although his testimony was equivocal, the husband also testified that he considered himself a North Carolina resident.

Q. Do you expect to stay here in North Carolina?

A. No, ma'am, I do not.

Q. Do you, in fact, want to leave North Carolina?

A. That's a fact, yes, ma'am.

COURT: Where do you intend for your residence to be?

A. At the present time I'm undecided, sir. I'm thinking about just staying here in North Carolina, sir.

COURT: Do you consider yourself a resident of North Carolina, or a resident of Florida?

A. A resident of North Carolina, sir.

He further testified that before leaving for Okinawa he had changed his "permanent address for military purposes" to Hubert, North Carolina. "I intend Hubert to be my permanent address when I leave North Carolina." However, he maintained his Florida driver's license, car and voter registration. The trial court found that

the [husband] is a resident of the State of North Carolina and has been for more than six months next preceding the institution of this action and the [husband] has resided in the State of North Carolina from July 1981 until the present time with the intention to make North Carolina his home state and to reside here permanently.

The wife relies on *Martin v. Martin*, 253 N.C. 704, 118 S.E. 2d 29 (1961), in arguing that the above finding is not supported by evidence that the serviceman husband intended to establish North Carolina as his "domicile." We need not determine whether there is competent evidence of his intent to establish a "domicile," since the "domicile" jurisdictional requirement for one of the parties in actions for divorce, N.C. Gen. Stat. Sec. 50-8 and -18 (1984); *Israel v. Israel*, 255 N.C. 391, 121 S.E. 2d 713 (1961); *Martin v. Martin*, is not applicable to child custody actions under Chapter

50A. "Historically, divorce has been regarded as an action *in rem*, and domicile has been considered the core of divorce jurisdiction." Note, 40 N.C. L. Rev. 343, 345 (1962). The policy reasons for the UCCJA support our analysis.

> The UCCJA marks a shift in the emphasis of policy in the area of child custody. The focus is no longer on what law a court should apply in resolving a custody dispute; instead the focus is on which court is best able to make the decision. The state with the maximum contact with the child will be the one to determine the case. This change indicates the UCCJA is definitely child-centered rather than parent-centered.

Comment, 4 Campbell L. Rev. 371, 376 (1982). *See also* Comment, 34 Mercer L. Rev. 861 (1983); *Unif. Child Custody Jurisdiction Act Sec. 3 & Commissioners' Note*, 9 U.L.A. 122-5 (1968). Significantly, the language of G.S. Sec. 50A-3(a) (1984) itself bolsters our interpretation. None of the four independent statutory bases for jurisdiction refer to "residence" or "domicile." Rather, the emphasis is on the maximum contact with the child. Therefore, the finding that the husband "is on active duty with the United States Marine Corps and is stationed at Camp Lejeune, North Carolina" is sufficient to satisfy the home state rule requirement that "a parent or person acting as parent continues to live in this State." G.S. Sec. 50A-3(a)(1)(ii) (1984).

[5] In its 1 December 1983 order, the trial court found that the children lived in North Carolina from July 1981 until December 1982. Although the evidence at the hearing was conflicting, as discussed in IIB, *supra*, there is competent evidence to support this finding. Further, the trial court found that the wife had removed the children from the state on 30 December 1982 "without the consent, desire or knowledge" of the husband. This again satisfies the provisions of subsection (ii) of the home state rule and is supported by competent evidence. Finally, the trial court found and concluded that "North Carolina is the home state. . . ." Findings of fact supported by competent evidence are binding on appeal. *Davison v. Duke Univ.*, 282 N.C. 676, 194 S.E. 2d 761 (1973). In contrast, conclusions of law denominated as findings of fact are fully reviewable. *Humphries v. City of Jacksonville*, 300 N.C. 186, 265 S.E. 2d 189 (1980). The above finding is actually a

conclusion of law. After reviewing the other findings, we conclude
that North Carolina *had been* the children's home state within six
months before commencement of the proceeding, thus fulfilling
the requirements of the home state jurisdictional basis. G.S. Sec.
50A-3(a)(1) (1984). Thus, the trial court correctly concluded that it
had jurisdiction over this child custody determination.

B. *Significant Connection Test*

**[6]** Alternatively, the evidence before the trial court and its find-
ings of fact were sufficient to conclude that the children and at
least one parent have a significant connection with this State,
G.S. Sec. 50A-3(2)(i) and that "substantial evidence relevant to the
[children's] present or future care, protection, training, and per-
sonal relationships . . . is available in this State." G.S. Sec.
50A-3(2)(ii). The trial court found that the children had lived in
North Carolina with their parents from July 1981 through Decem-
ber 1982, a period of one and a half years. Unlike the child in
*Holland v. Holland*, 56 N.C. App. 96, 286 S.E. 2d 895 (1982), who
had not lived in North Carolina for six years at the time of the
child custody dispute, the children in the case *sub judice* have
spent a substantial amount of time in this State recently. The
husband and the children have a "significant connection" with this
State. Consequently, "evidence of [their present or future] life
style, home environment, neighborhood environment, . . . and the
conditions of [their] health" is available in this State. *Holland*, 56
N.C. App. at 99, 286 S.E. 2d at 897; G.S. Sec. 50A-3(2)(ii). *See also*
*Plemmons v. Stiles* (residency of father and grandparents further
evidence of significant connection with this State).

IV

**[7]** In the *ex parte* order and the 1 December 1983 order the
trial court found that North Carolina was not an inconvenient fo-
rum to make the child custody determination "within the meaning
of N.C. Gen. Stat. Sec. 50A-7" (1984). G.S. Sec. 50A-7(a) grants the
trial court the discretion to decline to exercise its jurisdiction
upon finding that North Carolina is an inconvenient forum. Some
of the factors the trial court may consider include:

(1) If another state is or recently was the child's home state;

(2) If another state has a closer connection with the child and the child's family or with the child and one or more of the contestants;

(3) If substantial evidence relevant to the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) If the parties have agreed on another forum which is no less appropriate; and

(5) If the exercise of jurisdiction by a court of this State would contravene any of the purposes stated in G.S. 50A-1.

G.S. Sec. 50A-7(c) (1984). After reviewing the evidence, we find that the trial court did not abuse its discretion in finding that North Carolina was a convenient forum for this child custody determination.

## V

[8] Under N.C. Gen. Stat. Sec. 50A-6(a) (1984) a court of this State is prohibited from assuming jurisdiction in a child custody matter, "[i]f at the time of filing the petition a proceeding concerning the custody of the child was *pending* in a court of another state exercising jurisdiction substantially in conformity with this Chapter. . . ." (Emphasis added.) The wife's action was filed in Florida on 18 March 1983, the day *after* the husband filed his action in North Carolina. Therefore, the trial court was not prohibited from assuming jurisdiction by the Florida proceedings. *Plemmons v. Stiles* (Texas action filed 2 days later—no bar).

## VI

In summary, the trial court did not err in assuming jurisdiction over this child custody determination.

Affirmed.

Judges ARNOLD and WELLS concur.