JERRY LEONARD POTTER, JR., Plaintiff v. CYNTHIA ELIZABETH POTTER,
Defendant

No. COA97-398

(Filed 6 October 1998)

**Child Support, Custody, and Visitation— custody jurisdiction—foreign court—significant connection**

A trial court order in a child custody action denying defendant's motion to dismiss for lack of subject matter jurisdiction in North Carolina was reversed and subsequent custody orders were vacated where the parties disagreed at the hearing about the children's primary residence; defendant maintained that they lived in Tennessee during the week and were registered in the Tennessee school system; plaintiff asserted that the children spent their weekends in North Carolina as well as when they would "stay the night" during the week and on holidays; and the trial court stated at the hearing that, on the face of the affidavits, it would conclude that Tennessee would be the state with jurisdiction, but that the children had a significant connection with North Carolina and that it was not so unusual with the proximity of the state border to have "everything so jumbled up" that either state could hear the case. A trial court may assume significant connection jurisdiction under N.C.G.S. § 50A-3(a)(2) in an initial custody matter only upon proper determination by the court that the child in question has no home state as defined in 28

1

POTTER v. POTTER

[131 N.C. App. 1 (1998)]

U.S.C. § 1738A (b)(4) at the time the custody action before the court was commenced. The court's comments here cannot fairly be characterized as definitively expressing the determination that the children had no home state.

Appeal by defendant from an order filed 6 September 1996 and a judgment filed 17 October 1996 by Judge William A. Leavell in Avery County District Court. Heard in the Court of Appeals 20 November 1997.

*Joseph W. Seegers for plaintiff-appellee.*

*Legal Services of the Blue Ridge, Inc., by Karla P. Rusch, for defendant-appellant.*

JOHN, Judge.

Defendant appeals the trial court's 6 September 1996 order denying her motion to dismiss as well as the court's subsequent 17 October 1996 "Judgment" awarding primary physical custody of the parties' two minor children to plaintiff. We reverse the trial court's 6 September 1996 ruling and consequently vacate its later "Judgment."

Relevant facts and procedural information include the following: Plaintiff and defendant were married 5 January 1993 in Tennessee. Two children, Jonathan Robert (Jonathan), born 11 June 1992, and Candice Michelle (Candice), born 30 September 1989, were legitimized by the marriage. During the marriage, plaintiff and defendant separated on several occasions for brief periods of time, finally doing so permanently during the summer of 1995. Jonathan and Candice were both born in Tennessee and lived in that state until the parties' separation.

On 25 July 1996, plaintiff filed the instant action seeking divorce and custody of Jonathan and Candice. Defendant's 19 August 1996 answer included a counterclaim and motion to dismiss for lack of subject matter jurisdiction pursuant to N.C.G.S. § 1A-1, Rule 12(b)(1) (1997) (Rule 12(b)(1)) (defendant's motion).

At the hearing on defendant's motion, the parties disagreed regarding the children's primary residence following the separation. Defendant maintained the children lived in Tennessee during the week and were registered in the Tennessee school system. According to her, the children spent weekends, from Friday evening to Sunday evening, at the home of plaintiff's parents in North Carolina.

Defendant asserted the children "lived with [her] all their life" except for "weekends and maybe . . . the 4th of July." She acknowledged Jonathan had received treatment in both Tennessee and North Carolina for "lazy eye," a chronic eye condition.

On the other hand, plaintiff asserted the children spent weekends in North Carolina, as well as "when we'd go pick them up and they'd stay the night" during the week and during holidays. Plaintiff approximated the children were with him in North Carolina "[s]omewhere near half" the time. Following one visit on 15 July 1996 during which Jonathan had a medical appointment in North Carolina, plaintiff's mother did not return the children to defendant in Tennessee.

At the hearing, the trial court expressed concern that it was not "in the best interest to just start all over again in Tennessee," and that "just looking at the Affidavits on their face, [it] would conclude that Tennessee would be the state that has jurisdiction." However, the court continued, "the children do have a significant connection to this state because of their repeated visitation two days per week," and that given the proximity of the state border, "it's not so unusual to have everything so jumbled up that really either state could hear this case."

Ruling from the bench and specifically citing N.C.G.S. § 50A-3(a)(2) (1989) of North Carolina's Uniform Child Custody Jurisdiction Act (UCCJA), the trial court denied defendant's motion on grounds the children and "one contesting [party]," *i.e.*, plaintiff, had a significant connection with this State. A written order denying defendant's motion was filed 6 September 1996, a temporary custody order in favor of plaintiff being filed the same date. Plaintiff's reply to defendant's counterclaim was filed 16 September 1996. Following a full hearing 25 September 1996, the trial court awarded primary physical custody to plaintiff. Defendant timely appealed to this Court.

In her initial assignment of error, defendant challenges the court's denial of her motion to dismiss for lack of subject matter jurisdiction. The UCCJA controls the issue of jurisdiction in child custody cases. *Tataragasi v. Tataragasi*, 124 N.C. App. 255, 266, 477 S.E.2d 239, 245 (1996), *disc. review denied*, 345 N.C. 760, 485 S.E.2d 309 (1997). The section contains four bases upon which North Carolina courts are afforded jurisdiction:

(1) This State (i) is the home state of the child at the time of the commencement of the proceeding, or (ii) had been the child's

home state within six months before commencement of the proceeding and the child is absent from this State because of the child's removal or retention by a person claiming the child's custody or for other reasons, and a parent or person acting as parent continues to live in this State; or

(2) It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and the child's parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence relevant to the child's present or future care, protection, training, and personal relationships; or

(3) The child is physically present in this State and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(4)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

N.C.G.S. § 50A-3(a). No preference is expressed in the statute between the home state alternative provided in G.S. § 50A-3(a)(1) and the significant connection basis in G.S. § 50A-3(a)(2).

Notwithstanding, jurisdiction in child custody matters is simultaneously governed by the federal Parental Kidnapping Prevention Act of 1980 (PKPA). 28 U.S.C. § 1738A (1998); *In re Bhatti*, 98 N.C. App. 493, 494, 391 S.E.2d 201, 202 (1990). The PKPA "establishes national policy in the area of custody jurisdiction," *Gasser v. Sperry*, 93 N.C. App. 72, 74, 376 S.E.2d 478, 480 (1989), and provides full faith and credit in every state for decrees entered in conformity therewith. 28 U.S.C. § 1738A.

The PKPA and the UCCJA "provide[] substantially the same jurisdictional prerequisites." *Beck v. Beck*, 123 N.C. App. 629, 632, 473 S.E.2d 789, 790 (1996). For example, both permit the state wherein a custody claim is filed to assume jurisdiction if that state is the home state of the affected child. 28 U.S.C. § 1738A(c)(2)(A); *Beck*, 123

POTTER v. POTTER

[131 N.C. App. 1 (1998)]

N.C. App. at 632, 473 S.E.2d at 790. Moreover, in terms similar to G.S. § 50A-2(5), the PKPA defines "home state" as:

the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months . . . . Periods of temporary absence of any of such persons are counted as part of the six-month or other period.

28 U.S.C. § 1738A (b)(4).

Unlike the UCCJA, however, the PKPA limits assumption of jurisdiction on the basis of significant connection in initial custody determinations to instances in which no state qualifies as the home state. 28 U.S.C. § 1738A (c)(2)(B); *Beck*, 123 N.C. App. at 632, 473 S.E.2d at 790. In the words of the PKPA,

A child custody determination made by a court of a State is consistent with the provisions of this section *only* if—

. . . .

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B)(i) *it appears that no other State would have jurisdiction under subparagraph (A)*, and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

28 U.S.C. § 1738A(c) (emphasis added).

An apparent conflict thus exists between this state's UCCJA, providing home state and significant connection bases for jurisdiction as equal alternatives, and the federally enacted PKPA, permitting the significant connection alternative only in the absence of a home state. This Court has previously held that to the extent any state custody

statute conflicts with provisions of the PKPA, the federal enactment controls. *Gasser*, 93 N.C. App. at 74-75, 376 S.E.2d at 480; *see also Thompson v. Thompson*, 484 U.S. 174, 181, 98 L. Ed. 2d 512, 521 (1988) (PKPA imposes uniform national standards for allocating and enforcing custody determinations). Accordingly, a trial court may assume significant connection jurisdiction under G.S. § 50A-3(a)(2) in an initial child custody matter only upon proper determination by the court that the child in question has no home state as defined in 28 U.S.C. § 1738A (b)(4) at the time the custody action pending before the trial court was commenced.

The foregoing holding is consistent with the strong home state preference expressed in our jurisprudence. For example, this Court has refused to recognize a foreign custody determination dependent upon significant connection jurisdiction when North Carolina was the home state. *See, e.g., Beck*, 123 N.C. App. 629, 473 S.E.2d 789 (trial court erred in refusing jurisdiction to modify custody decree where North Carolina was home state and Kentucky had assumed jurisdiction based upon significant connection); *Williams v. Williams*, 110 N.C. App. 406, 430 S.E.2d 277 (1993) (trial court erred in giving full faith and credit to Indiana order which failed to contain requisite findings of fact supporting either home state or significant connection jurisdiction); *Schrock v. Schrock*, 89 N.C. App. 308, 365 S.E.2d 657 (1988) (trial court properly refused to give full faith and credit to Michigan custody decree where North Carolina was home state); and *Davis v. Davis*, 53 N.C. App. 531, 542, 281 S.E.2d 411, 417 (1981) (trial court erred in enforcing California custody decree where California was not home state, no evidence was presented of significant connection with California, and home state "clearly" was North Carolina).

By the same token, this Court has also deferred to foreign jurisdictions which qualified as the child's home state. *See, e.g., In re Bhatti*, 98 N.C. App. 493, 391 S.E.2d 201 (trial court properly declined jurisdiction based on its conclusion Georgia was the home state) and *Holland v. Holland*, 56 N.C. App. 96, 286 S.E.2d 895 (1982) (trial court's assumption of jurisdiction under UCCJA significant connection basis reversed where Georgia was the home state; insufficient evidence of significant connection basis; PKPA not mentioned).

Moreover, earlier decisions indicating jurisdiction might be appropriate under either the home state or significant connection bases of the UCCJA are distinguishable in that these cases simply failed to consider the effect of the PKPA. *See, e.g., Pheasant v.*

POTTER v. POTTER

[131 N.C. App. 1 (1998)]

*McKibben,* 100 N.C. App. 379, 396 S.E.2d 333 (1990), *disc. review denied,* 328 N.C. 92, 402 S.E.2d 417 (1991) (trial court properly determined jurisdiction under home state prong of UCCJA or, in the alternative, the significant connection basis); *Brookshire v. Brookshire,* 89 N.C. App. 48, 365 S.E.2d 307 (1988) (jurisdiction properly based upon significant connection where no action pending in another state); *Brewington v. Serrato,* 77 N.C. App. 726, 336 S.E.2d 444 (1985) (no error in denial of motion to dismiss for lack of subject matter jurisdiction where trial court assumed jurisdiction under either home state or significant connection alternate); *Hart v. Hart,* 74 N.C. App. 1, 327 S.E.2d 631 (1985) (jurisdiction proper under home state alternative of UCCJA, but also sufficient evidence under significant connection basis); and *Latch v. Latch,* 63 N.C. App. 498, 305 S.E.2d 564 (1983) (motion to dismiss for lack of subject matter jurisdiction properly denied where significant connection existed).

In addition, according primacy to the home state comports with the legislative impetus which prompted passage of both the state and federal acts. The UCCJA "represented a novel effort to resolve the confusion by promulgating coherent and uniform rules for determining custody jurisdiction." *Meade v. Meade,* 812 F.2d 1473, 1475 (4th Cir. 1987). However, the UCCJA proved to be an "imperfect remedy" when states adopted different versions and interpretations of the uniform requirements, *id.* at 1476, notably concerning the quantity of evidence deemed sufficient to satisfy jurisdictional bases such as that of significant connection. *See, e.g., Holland,* 56 N.C. App. at 100, 286 S.E.2d at 898 ("substantial evidence" must support court's determination of significant connection, and this must be "more than a scintilla" or simply "any competent evidence").

Indeed, at the time the UCCJA was promulgated, the significant connection alternate was intended to provide a "very limited basis" for jurisdiction. Roger M. Baron, *Federal Preemption in the Resolution of Child Custody Jurisdiction Disputes,* 45 Ark. L. Rev. 885, 898 (1993). However, it turned into a loophole resulting in the "furtherance of child snatching by the creation of haven states which might be willing to provide jurisdiction for absconding parents." *Id.*

Congress responded by adopting the PKPA in 1980. *Id.; see also* Andrea S. Charlow, *Jurisdictional Gerrymandering and the Parental Kidnapping Prevention Act,* 25 Fam. L. Q. 299, 300 (1991). Congress' underlying assumption in adopting the PKPA was

that by requiring all states to accord full faith and credit to child custody orders that meet prescribed jurisdictional criteria, states naturally desiring recognition of their own orders would not accept jurisdiction without first meeting the requirements of the act.

Charlow, *supra*, at 300.

We also note that many states, either by statute or judicial decision, have rejected jurisdiction under the significant connection alternative if the child has a home state. *See, e.g.*, Tenn. Code Ann. § 36-6-203 (1997); Tex. Fam. Code Ann. § 152.003 (West 1997); *Williams v. Williams*, 609 N.E.2d 1111, 1113 (Ind. Ct. App. 1993) ("[i]t is only when the 'home state' test does not apply to the facts that the 'significant connection' test found in . . . [Indiana's version of the UCCJA] may be used to provide an alternative basis for subject matter jurisdiction"); *State ex rel. Griffin v. District Court of the Fifth District*, 831 P.2d 233, 240 (Wyo. 1992) ("[a] foreign state which is neither a decree state nor a home state may not assume jurisdiction in contravention to the UCCJA and PKPA preference for 'home state' jurisdiction"); *Shute v. Shute*, 607 A.2d 890, 893 (Vt. 1992) ("the PKPA preempts the Vermont statutes that conflict with the PKPA . . . . [B]est interest of the child is no longer controlling [in custody case] if the child has a home state").

Similarly, the current version of the UCCJA being promulgated by the Uniform Law Commissioners, entitled the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), tracks the language of the PKPA. The Act allows jurisdiction in an initial child custody determination on the basis of significant connection only if the child has no home state. The UCCJEA was adopted by Alaska and Oklahoma in 1998 and has been introduced in the legislatures of twelve additional states.

Having explored the intersection of state and federal law, the legislative motives behind the UCCJA and the PKPA, and the law of other jurisdictions, we turn now to application of our holding in the case *sub judice*. At the hearing on defendant's motion, the trial court was faced with evidence of connection by the children with both Tennessee and North Carolina, but observed that the parties' Affidavits as to Status of Minor Child indicated Tennessee would be the state with jurisdiction. However, the trial court noted it was not unusual, given the proximity of state borders, for circumstances to be "jumbled up." Ultimately, the trial court expressed its concern with

**POTTER v. POTTER**

[131 N.C. App. 1 (1998)]

delay of a final custody determination and decided that "[i]t started here [North Carolina] so we might as well finish it here."

However understandable the trial court's sentiments, we conclude the foregoing does not comply with prerequisites of the UCCJA and the PKPA for assumption of jurisdiction in child custody matters. Based upon the extended analysis above, we hold the court erroneously concluded it might assume jurisdiction over an initial custody determination under the significant connection alternative set out in the UCCJA without first properly determining the children had no home state as defined in the PKPA at 28 U.S.C. § 1738A (b)(4).

First, it is undisputed that the trial court's formal order denying defendant's motion contains no such conclusion. In addition, the court's comments issued contemporaneously with its oral ruling cannot fairly be characterized as definitively expressing the determination that the children had no home state. Absent such a determination, the trial court's denial of defendant's motion upon its assumption of jurisdiction under G.S. § 50A-3(a)(2) constituted error and is reversed. It follows that the record thereby fails to reflect that the court had jurisdiction to enter its 6 September 1996 temporary custody order and its 17 October "Judgment" awarding permanent custody. Accordingly, those directives are vacated.

Prior to concluding, we emphasize that the action *sub judice* was one for initial determination of custody as opposed to a modification decree. At the filing of plaintiff's complaint, there was no pending or prior decree of custody in another jurisdiction. Further, we recognize that the UCCJA is a jurisdictional statute and the PKPA a full faith and credit statute. The objection might therefore be raised that we should concern ourselves only with the law of this state in the absence of a pending foreign action. We believe such a narrow resolution would be unsatisfactory.

For example, plaintiff filed his custody action only days after failing to cause the children to be returned to defendant, leaving defendant little time to initiate process in Tennessee. Child custody in no way should be determined with a "race to the courthouse" mentality if the best interests of the child are truly the goal.

Further, to allow custody decisions based upon significant connection jurisdiction without regard to the PKPA would essentially render such decrees meaningless in any state but our own. The Vermont Supreme Court considered such a circumstance in *Columb v. Columb*, 633 A.2d 689 (Vt. 1993).

In *Columb*, plaintiff father urged the court to allow jurisdiction under the equivalent significant connection basis set out in Vermont's UCCJA. *Id.* at 691. He conceded any resulting custody order would not be "entitled to full faith and credit" under the PKPA in other states, but argued the Vermont court should

> ignore this deficiency because other states are free to recognize [the Vermont] order even if they are not required to do so [under the PKPA].

*Id.* at 692.

> The court responded as follows:

> The theoretical possibility that a home state would recognize a Vermont custody order issued without the full faith and credit protection of the PKPA is overwhelmed by the reality that courts have too often failed to respect other states' custody decrees even when issued in conformity with the UCCJA and PKPA. Further, a home state custody order issued in direct conflict with such a Vermont order would be entitled to full faith and credit in other states and, by virtue of the PKPA, in Vermont. Thus, if Vermont moves to assert jurisdiction when its order is not entitled to full faith and credit, the mother has every incentive to start a proceeding in Utah and refuse to comply with any Vermont order. To ignore these realities is likely to entangle this child in a web of proceedings satisfactory to no one.

*Id.* (citations omitted). We agree.

In sum, the trial court's order denying defendant's motion to dismiss for lack of subject matter jurisdiction is reversed, and its 6 September 1996 order of temporary custody and 17 October 1996 permanent custody "Judgment" are vacated. In view of the foregoing, we decline to consider defendant's remaining assignments of error.

Reversed in part and vacated in part.

Judges MARTIN, John C., and SMITH concur.