[No. B116659. Second Dist., Div. Seven. Nov. 30, 1998.]

In re the Marriage of OTIS W. and GRENDA L. NEWSOME.
OTIS W. NEWSOME, Respondent, v.
GRENDA L. NEWSOME, Appellant.

950

## COUNSEL

Jane S. Preece for Appellant.

Jacqueline Staten for Respondent.

## OPINION

**LILLIE, P. J.**—In this dissolution of marriage proceeding, Grenda L. Newsome appeals from an August 12, 1997, order denying her motion to set aside an order and judgment awarding custody of the parties' four minor children to Otis W. Newsome. She contends (1) the trial court erred in failing to set aside the custody provisions of an interim order and the judgment as void for lack of subject matter jurisdiction, and (2) in the alternative, the court abused its discretion in failing to set aside the default and default judgment under Code of Civil Procedure section 473 on the ground of excusable neglect.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 16, 1996, Otis Newsome (plaintiff) filed a petition for dissolution of marriage seeking, inter alia, custody of the parties' four minor

children.[1] According to the petition, the parties married in Texas in June 1973 and separated in March 1993. The parties lived in Texas from 1973 until 1989, when the family moved to California; Agnes was born in August 1983; Otis was born in January 1986; Vincent was born in December 1987, and Alicia was born in July 1990. In April 1993, the mother returned with all four children to Texas; plaintiff remained in California.

Plaintiff's income and expense declaration indicated that he was employed by Pacific Bell as a cable splice technician and earned $72,560 per year; his total monthly disposable income was $4,666, and his monthly expenses were $1,956.

Accompanying the petition for dissolution, plaintiff filed an order to show cause (OSC) requesting custody of all four children and modification of a child support order of April 30, 1996, for $1,342, which was obtained against him by the State of Texas Attorney General in the Los Angeles County Superior Court. In his declaration accompanying the OSC, plaintiff charged Grenda Newsome (hereinafter defendant or appellant) with abandoning him and fleeing with the children to Texas in April 1993. Plaintiff also charged defendant with infidelity, alcohol abuse, and child neglect from 1989 to 1993; he also stated that in August 1994, Tammy was allegedly physically attacked by her mother, removed from her mother's home and placed with her paternal uncle in Texas until December 1994, when plaintiff went to Texas and brought Tammy back to live with him in California. According to plaintiff, his other four children telephoned him constantly, asking him to come live with him because of their mother's neglect. Defendant was served in Texas with the petition for dissolution and the OSC.

At the September 12, 1996, hearing on the OSC, plaintiff's counsel informed the court that defendant was on aid to families with dependent children (AFDC) in Texas and that the court had issued a child support order and a wage assignment. Counsel also informed the court that defendant had been served in Texas and had not filed any response, although she had allegedly contacted plaintiff and told him that he could come and get the

---

[1] According to Grenda Newsome, the parties actually had six children, one of whom was an adult at the time of the filing of the petition, and who was not named in the petition. Tammy, born in February 1979, was 17 years old at the time the petition was filed, but she turned 18 the day after the default judgment was entered awarding Otis Newsome custody of the 5 minor children. Grenda's motion to set aside and vacate the default and default judgment did not seek to set aside any ruling as to Tammy, who by then had turned 18, but only sought to vacate the judgment as to the 4 minor children. Accordingly, we do not consider the issue of custody of Tammy to be before us. Of the other four children, Agnes, Otis and Vincent were born in Texas; Alicia was born in California in 1990.

children. The court granted the relief requested by plaintiff, awarding him custody of the children, with monitored visitation by the mother; the court also made a temporary order suspending plaintiff's child support payments and staying the wage assignment. A formal order incorporating the foregoing rulings was filed on October 3, 1996.

By letter to the superior court dated December 30, 1996, defendant informed the court that: she and her children were homeless; she had only received child support for October and November and was evicted from her home after the child support stopped; AFDC had been stopped in order to get the child support of $1,342 per month. Defendant, in propria persona, also sent to the superior court a response seeking custody of the children, but the response was not filed; on January 8, 1997, the superior court clerk sent a form letter to defendant informing her that a $184 fee was due for her response.

Upon request by plaintiff to enter default, defendant's default was entered on February 24, 1997. On February 26, 1997, a default judgment was entered awarding physical custody of all of the children solely to plaintiff; defendant was awarded monitored visitation; spousal support was waived.

On June 20, 1997, defendant, through counsel, filed an application for waiver of court fees and costs, which was granted. She also filed a motion to vacate the October 3, 1996, order and the default judgment, challenging, inter alia, the provisions relating to custody and visitation on the ground that the California court had no jurisdiction over the issue of custody of the four younger children under the Uniform Child Custody Jurisdiction Act (UCCJA; Fam. Code, § 3400 et seq.), and under the Parental Kidnapping Prevention Act (PKPA; 28 U.S.C. § 1738A). Defendant asserted that it was undisputed that the home state of the four younger children was Texas and that California had no jurisdiction to enter custody and visitation orders concerning those children. As an alternative form of relief if the court determined it had subject matter jurisdiction over the custody issue, the motion also sought to set aside the default and default judgment pursuant to Code of Civil Procedure section 473, subdivision (b), because of excusable neglect.[2] Defendant maintained that she failed to pay the filing fee for her response because she was supporting herself and her children on $288 per

---

[2]Because jurisdiction under the UCCJA does not require personal jurisdiction over a nonresident parent (*In re Marriage of Fitzgerald & King* (1995) 39 Cal.App.4th 1419, 1428 [46 Cal.Rptr.2d 558]), and because jurisdiction under the UCCJA cannot be conferred by consent, waiver or estoppel (*In re Marriage of Arnold & Cully* (1990) 222 Cal.App.3d 499, 503 [271 Cal.Rptr. 624]), it is irrelevant to the issue of jurisdiction under the UCCJA that defendant filed a motion for relief pursuant to Code of Civil Procedure section 473, and sought alternative relief to set aside the judgment and file a response.

month, and the court did not advise her that she could apply to the court for a fee waiver.

Defendant's motion was supported by her declaration stating that: from the time she moved to Texas in 1993 through August 1996, plaintiff paid her nothing in child support, although for a year he did pay her rent of $225 directly to the landlord; in 1995, he sent her $500 to buy a car, and when that car broke down, he sent payments for another car directly to the dealership; periodically he would send gifts and money to the children; in mid-1996, the government obtained an order against plaintiff requiring him to pay child support of $1,364; she was told that she could not receive the child support until she terminated welfare, so she terminated welfare and received child support for September and October 1996; when the child support was cut off, she reapplied and received welfare for November 1996.

Tammy also provided a declaration stating that: from January 1995 to August 1996, she lived with her father in California; he gave her money for nice clothing and bought food for her and her friends; during this time, her mother would call asking for money to pay the light bill and her father told her he had no money; her father took her to a fancy banquet and told her that he had a lot of money saved; Tammy began to feel bad about "my brother and sisters suffering in a dark house back in Texas." In August 1996, her father gave her some money, which she used to buy a plane ticket to return to Texas, where she has since remained.

Although plaintiff filed a form responsive declaration in opposition to defendant's motion, stating that he did not consent to the order she requested and wanted the current orders to remain in effect, he provided no other evidence in opposition to the motion. Plaintiff's points and authorities did not dispute the fact that the home state of the four younger children was Texas; rather, plaintiff asserted that California courts had jurisdiction over the issue of child custody under 28 United States Code section 1738A(c)(1)(2)(C), based on the allegations of the existence of an emergency "because of the urgent need to protect the children from continuing mistreatment and abuse" at the hands of defendant, citing defendant's alleged abuse of alcohol and drugs.[3]

At the hearing on the defendant's motion, plaintiff's counsel argued that defendant had taken the children and was in hiding in Texas and "the

---

[3]At the hearing on the motion, and in his brief on appeal, Otis Newsome did not assert that jurisdiction over the custody issue is proper under that portion of Family Code section 3403 dealing with emergency situations. (See Fam. Code, § 3403, subd. (a)(3).) The trial court also made no such findings supporting jurisdiction under the latter provision. Therefore, we deem any such argument to have been abandoned by respondent and do not address this issue.

The parties also assume, and we deem to be established for purposes of this appeal, that Texas was the home state of the four younger children at the time of the commencement of

children are still being abused and mistreated," but the trial court responded, "No. I don't have any evidence of that." The trial court also acknowledged that this case did not present any situation of kidnapping of the children or "taking them from their home state to another state and filing actions in that state." In denying the motion to set aside the portion of the judgment dealing with the issue of custody, the court stated that it "does find that there were substantial contacts with the children in this state, and the Court has jurisdiction [under Family Code section 3403.]" The trial court also denied relief to defendant under Code of Civil Procedure section 473, finding that "her neglect in filing a response and in filing this motion in a timely manner are unexcused."

Defendant filed timely notice of appeal from the order denying her motion to set aside those portions of the October 3, 1996, order and the judgment concerning custody and visitation of the parties' four younger children.

Discussion

■ "The exclusive method of determining subject matter jurisdiction in custody cases in California is the Uniform Child Custody Jurisdiction Act (UCCJA). [Citations.] The jurisdictional requirements of the UCCJA must

---

the proceeding in the trial court. The UCCJA "was adopted in California in 1973 and has now been adopted by every state and the District of Columbia. However, problems of jurisdictional deadlock remained, and in 1980 Congress passed the PKPA (28 U.S.C.A. § 1738A), which, like the UCCJA, establishes guidelines for the assertion of jurisdiction over child custody matters. In *In re Marriage of Pedowitz* (1986) 179 Cal.App.3d 992, 999 . . . , the court concurred with the decisions of other state courts which had considered the matter and had held unanimously that the federal act preempts state law." (*Wallace* v. *Superior Court* (1993) 15 Cal.App.4th 1182, 1186 [19 Cal.Rptr.2d 157].)

Finally, we point out that respondent's brief is replete with alleged factual details that are not established on the instant record and raise questions not litigated below. We thus ignore respondent's statements and arguments pertaining to his alleged attempt to obtain a writ of habeas corpus in a Texas court, and his assertion that the Texas court addressed the issue of custody and declined to exercise its home state jurisdiction because of the existence of the California judgment, thus allegedly giving the California judgment full faith and credit. No proceedings in any Texas court have been properly brought to our attention, and were not brought to the attention of the trial court herein. In June 1997, in the trial court, defendant filed a form declaration under the UCCJA stating that she had not participated in any other litigation or custody proceeding in California or elsewhere, and had no information about any other custody proceedings in a California court or in any other court. Plaintiff did not dispute this declaration, and he also had filed a similar declaration in August 1996. Accordingly, we must ignore the portions of respondent's brief containing factual assertions not supported by the evidence in our record, and pertaining to issues not litigated below. We also note that in order for the provision of 28 United States Code section 1738A(c)(2)(D)(i) to come into play, the Texas court must have declined jurisdiction on the ground that California was the more appropriate forum. (*In re Marriage of Kastanas* (1995) 78 Wn. App. 193, fn. 4 [896 P.2d 726, 730].) There is no evidence in our record to support the claim that Texas declined jurisdiction, or declined jurisdiction on this ground.

be satisfied whenever a California court makes a custody determination by initial or modification decree. [Citations.] The provisions of the UCCJA apply in custody cases involving international as well as interstate conflicts. [Citation.] Since an adjudication under UCCJA requires subject matter jurisdiction, a reviewing court is not bound by the trial court's findings and may independently reweigh the jurisdictional facts." (*In re Marriage of Arnold & Cully* (1990) 222 Cal.App.3d 499, 502 [271 Cal.Rptr. 624], fn. omitted.) Subject matter jurisdiction either exists or does not exist at the time the action is commenced. (*Adoption of Zachariah K.* (1992) 6 Cal.App.4th 1025, 1035 [8 Cal.Rptr.2d 423].) There is no provision in the UCCJA for jurisdiction by reason of presence of the parties or by stipulation or consent. (*Ibid.*)

Inasmuch as the UCCJA "shall be construed to effectuate the general purpose to make uniform the law in those states which enact that provision" (Fam. Code, § 3), the decisions of other states, interpreting similar provisions of the UCCJA as adopted in that state, are persuasive. Moreover, cases interpreting the predecessor statute to Family Code section 3403 (former Civil Code section 5152) are persuasive, in that Family Code section 3403 continues former Civil Code section 5152 without substantive change. (Cal. Law Revision Com. com., Deering's Ann. Fam. Code (1994 ed.) § 3403, p. 433.)

"Under the UCCJA as adopted in California [in 1973], a court has jurisdiction to make a child custody determination by initial or modification decree if one of a number of conditions is met, including, '(1) This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of removal or retention by a person claiming custody . . . . (2) It is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. . . .' (Fam. Code, § 3403 [Civ. Code, former § 5152].) 'Home state' is defined as 'the state in which the child immediately preceding the time involved lived with the child's parents, a parent, or a person acting as parent, for at least six consecutive months . . . . (Fam. Code, § 3402, subd. (e) [Civ. Code, former § 5151].)" (*Brossoit* v. *Brossoit* (1995) 31 Cal.App.4th 361, 368-369 [36 Cal.Rptr.2d 919].)

 Family Code section 3401, subdivision (a)(3) (Civil Code former section 5150), provides that one of the purposes of the UCCJA is to "Assure

that litigation concerning the custody of a child take place ordinarily in the state with which the child and the child's family have the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and the child's family have a closer connection with another state." Thus, in *Hafer* v. *Superior Court* (1981) 126 Cal.App.3d 856 [179 Cal.Rptr. 132], a case arising under Civil Code former section 5152, the court stated that "The normal preference is for adjudicating custody disputes in the home state where the children live, where the most evidence of their daily living conditions will be found, where the continuity and stability of their parental relationship and their daily routines will be least disrupted by the legal procedure. . . . [¶] . . . [¶] . . . The children's home is the presumptively correct forum." (126 Cal.App.3d at pp. 865-866.)

Even aside from consideration of the federal PKPA, enacted in 1980, California had interpreted the UCCJA as giving preference to "home state" jurisdiction (*Plas* v. *Superior Court* (1984) 155 Cal.App.3d 1008, 1014 [202 Cal.Rptr. 490]), which preference applies even in the absence of a pending action in the home state: "The UCCJA is intended to prevent potential as well as actual conflict, and prevents bringing modification procedures in unsuitable forums without making a bona fide attempt to invoke the jurisdiction of the correct court." (*Hafer* v. *Superior Court, supra,* 126 Cal.App.3d at p. 862 [California had no jurisdiction under UCCJA to modify custody provision in California dissolution decree where children had lived with father in Idaho, the home state, for over three years preceding modification proceeding].) Accordingly, under California's interpretation of the UCCJA, the "significant connection" basis for jurisdiction was intended to limit, rather than proliferate, jurisdiction. (*Guardianship of Donaldson* (1986) 178 Cal.App.3d 477, 489 [223 Cal.Rptr. 707].) Moreover, the "significant connection" basis for jurisdiction requires maximum rather than minimum contact with the state, and must be in the best interest of the child, not the contestants. (*Ibid.*)

Some states had interpreted their version of the UCCJA as providing home state and significant connection bases for jurisdiction as equal alternatives. (See *Potter* v. *Potter* (N.C.Ct.App. 1998) 505 S.E.2d 147, 150.) In addition, the "states adopted different versions and interpretations of the uniform requirements, [citation], notably concerning the quantity of evidence deemed sufficient to satisfy jurisdictional bases such as that of significant connection." (*Id.* at p. 151.) Because problems of jurisdictional deadlock remained even after most states had enacted the UCCJA, Congress

enacted the PKPA in 1980. (*Wallace* v. *Superior Court* (1993) 15 Cal.App.4th 1182, 1186 [19 Cal.Rptr.2d 157].) The PKPA provides express preference to the home state of the child, and the "significant connection" test is used only if it appears no other state would have jurisdiction under the "home state" test. (*Ibid.*)[4]

---

[4]"[T]he current version of the UCCJA being promulgated by the Uniform Law Commissioners, entitled the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), tracks the language of the PKPA. The Act allows jurisdiction in an initial child custody determination on the basis of significant connection only if the child has no home state. The UCCJEA was adopted by Alaska and Oklahoma in 1998 and has been introduced in the legislatures of twelve additional states." (*Potter* v. *Potter, supra*, 505 S.E.2d at p. 151.)

On September 29, 1998, the Governor of California vetoed Senate Bill No. 1717, which would have enacted the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) in California. (Governor's Veto Message to Sen. on Sen. Bill No. 1717 (Sept. 29, 1998) Sen. J. (1997-1998 Reg. Sess.) pp. 6673-6674.)

The utility of a new uniform act is evident in light of the varying interpretations the courts have given the UCCJA in light of the PKPA. The court in *In re Marriage of Murphy* (1998) 90 Wn.App. 488 [952 P.2d 624, 628], stated: "The PKPA is a full faith and credit statute. The PKPA applies only to the enforcement or modification of an existing custody decree or when a custody action is already pending in another state. If a custody decree does not already exist, or there is no custody action pending in another state, the federal act has no application. [Citation.] For this reason, [appellant] cannot use the PKPA to displace Ohio's jurisdiction over the initial custody determination because at the time the original custody petition was filed, no other custody action was pending. Hence, Ohio's jurisdiction over this custody matter is determined by reference to its state law or, specifically, the UCCJA as adopted in Ohio."

Contrary to the view of the Court of Appeals of Washington in *In re Marriage of Murphy*, the Court of Appeals of North Carolina in *Potter* v. *Potter* reasoned that even though the UCCJA is a jurisdictional statute and the PKPA a full faith and credit statute, to ignore the PKPA and to be concerned only with the law of the forum in the absence of a pending foreign action is an unsatisfactory resolution. "[T]o allow custody decisions based upon significant connection jurisdiction without regard to the PKPA would essentially render such decrees meaningless in any state but our own. The Vermont Supreme Court considered such a circumstance in *Columb* v. *Columb*, 161 Vt. 103, 633 A.2d 689 (1993). In *Columb*, plaintiff father urged the court to allow jurisdiction under the equivalent significant connection basis set out in Vermont's UCCJA. [Citation.] He conceded any resulting custody order would not be 'entitled to full faith and credit' under the PKPA in other states, but argued the Vermont court should ignore this deficiency because other states are free to recognize [the Vermont] order even if they are not required to do so [under the PKPA]. [Citation.] The court responded as follows: 'The theoretical possibility that a home state would recognize a Vermont custody order issued without the full faith and credit protection of the PKPA is overwhelmed by the reality that courts have too often failed to respect other states' custody decrees even when issued in conformity with the UCCJA and PKPA. Further, a home state custody order issued in direct conflict with such a Vermont order would be entitled to full faith and credit in other states and, by virtue of the PKPA, in Vermont. Thus, if Vermont moves to assert jurisdiction when its order is not entitled to full faith and credit, the mother has every incentive to start a proceeding in Utah and refuse to comply with any Vermont order. To ignore these realities is likely to entangle this child in a web of proceedings satisfactory to no one.' [Citation.] We agree." (*Potter* v. *Potter, supra*, 505 S.E.2d at p. 152.)

Under the circumstances in the instant case, we conclude that California's version of the UCCJA did not permit the California court to assert jurisdiction over the issue of child custody because Texas was admittedly the home state of the minor children, and California's version of the UCCJA gives preference to home state jurisdiction. This result obtains even if there was no pending proceeding in Texas. (See *Hafer* v. *Superior Court, supra,* 126 Cal.App.3d at p. 862.) However, even if our interpretation of California's UCCJA is erroneous, and there is no preference for home state jurisdiction under California's UCCJA, we conclude that there is insufficient evidence in this record to support jurisdiction under the significant connection test.

■ Under the significant connection test, "a California court may assume jurisdiction only if 'it is in the best interest of the child,' a conclusion which cannot be reached unless it is demonstrated the child and at least one parent have a significant connection with this state and that there is available in California substantial evidence concerning the child's care and relationships with others." (*Plas* v. *Superior Court, supra,* 155 Cal.App.3d at p. 1015.) "The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state." (*Id.* at p. 1016.)

Moreover, the best interest language was not intended to be an invitation to address the merits of the custody dispute in the context of the jurisdictional determination. Rather, the court's inquiry is limited to the determination of whether it is in a better position than another court to decide the merits of the case and thus serve the best interest of the child. (*Plas* v. *Superior Court, supra,* 155 Cal.App.3d at p. 1022.) "*In re Marriage of Carney* (1979) 24 Cal.3d 725, 730-731 . . . strongly emphasizes children's needs for stability and continuity. So also does the [UCCJA]." (*Hafer* v. *Superior Court, supra,* 126 Cal.App.3d at p. 866.) Thus, the normal preference is for adjudicating custody disputes in the home state where the children live, where the most evidence of their daily living conditions will be found, and where the continuity and stability of their parental relationship and their daily routines will be least disrupted by the legal procedure. (*Id.* at p. 865.)

■ An examination of the minor children's connection with California in light of the above guidelines demonstrates the trial court erred in finding jurisdiction. The children, ages six, nine, ten and thirteen, had lived in Texas with their mother for over three years at the time this proceeding was commenced. There is no indication in this record that respondent had visited with his children in Texas, or that the children had visited with him in California during that three-year period, although he may have occasionally

sent them gifts and talked with them on the telephone. Other than the fact that their father still resided in California, there was no other connection between the children and California in August 1996. While the children had lived with their parents in California for approximately four years, from May 1989 to April 1993, it is clear that by August 1996, the bulk of the relevant information, if not all information, relating to the children, their family relationships, their schooling, friends, and their future care, protection and training was in Texas. By August 1996, the children and their mother had lived for most of their lives, including the last three years, in Texas. Thus, there were maximum, as opposed to minimum, contacts with the State of Texas. Accordingly, the trial court herein lacked jurisdiction over the issue of child custody and should have granted appellant's motion to vacate the custody and visitation provisions of its orders and the judgment. This conclusion obviates the need to address appellant's contention with respect to the ruling denying relief under Code of Civil Procedure section 473.

## DISPOSITION

The order of August 12, 1997, is reversed and on remand the trial court is directed to enter a new order granting appellant's motion to vacate orders and judgment concerning custody and visitation of the four minor children. Appellant is entitled to costs on appeal.

Johnson, J., and Neal, J., concurred.