# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 5, 2000 Session

## JANINE S. TAYLOR HINES v. RICHARD MICHAEL TILIMON

**Appeal from the Circuit Court for Knox County**
**No. 82554      Bill Swann, Judge**

**FILED JANUARY 19, 2001**

**No. E2000-00912-COA-R3-CV**

---

This is an interstate custody dispute.  Janine S. Taylor Hines ("Mother") filed this action seeking a declaratory judgment pertaining to the custody of the parties' minor child.  She also sought to modify certain foreign orders pertaining to the visitation rights of the defendant, Richard Michael Tilimon ("Father").  The trial court (a) entered a default judgment against Father, (b) declared Tennessee to be the child's home state, (c) decreed that custody would remain with Mother, and (d) limited Father's visitation to supervised visits in the state of Tennessee.  The court later denied Father's motion to set aside the default judgment.  Father appeals, raising issues as to subject matter jurisdiction, *in personam* jurisdiction, venue, and service of process.  He also argues that the trial court erred (1) in denying his request for a continuance of the hearing on the plaintiff's motion for default judgment; (2) in not allowing him to participate by telephone in the hearing on his motion to set aside the default judgment; (3) in denying his motion to set aside the default judgment; (4) in ordering supervised visitation; and (5) in awarding Mother her attorney's fees.  By a separate issue, Mother seeks attorney's fees for this appeal.  We affirm and remand for a hearing to set Mother's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded with Instructions**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Laura Rule, Knoxville, Tennessee, for the appellant, Richard Michael Tilimon.

Jonathan A. Moffatt, Knoxville, Tennessee, for the appellee, Janine S. Taylor Hines.

Paul G. Summers, Attorney General and Reporter, and Kim Beals, Assistant Attorney General, for the State of Tennessee.

**OPINION**

I. *Procedural History*

Mother and Father lived together for a period of time in California. They never married. When Mother was seven months pregnant with Father's child, she moved by herself to Ohio. The minor child, Steven Michael Tilimon, was born in Ohio on October 7, 1985. In January, 1986, Father filed an action in an Ohio juvenile court, seeking to establish paternity and obtain custody of the child. Father's paternity was subsequently established, but the juvenile court awarded Mother custody. In later orders, the Ohio juvenile court addressed the issues of child support and visitation.

In February, 1993, Mother and the child moved to Oklahoma, where she eventually married. While Mother was living in Oklahoma, Father filed a petition for change of custody in California. Prior to that filing, the Ohio juvenile court had ordered the parties' case transferred to Oklahoma. The Ohio court had also ordered Mother to file a motion in the appropriate Oklahoma court to accomplish this transfer. Mother delayed filing such a motion until May, 1995. Her filing was apparently prompted by Father's filing in California. After the judges of the California and Oklahoma courts conferred, the California court deferred to the Oklahoma court.

In July, 1996, Mother moved with her child and new husband to Tennessee. Shortly thereafter, a trial was held in Oklahoma on Father's petition to change custody and on the petitions for contempt filed by both parties. By later order, the Oklahoma court denied Father's petition to modify and ordered that custody remain with Mother. That court found Mother in contempt for willfully violating the visitation orders of the Ohio court and found Father in contempt for willfully failing to pay child support. Father was found to be $5,903 in arrears. The court reserved the issue of whether Social Security payments made to Mother for the benefit of the child should be credited against Father's child support obligation. The parties were ordered to return for sentencing on the findings of contempt. When the sentencing hearing was held, Father failed to appear. In an order entered December 30, 1996, the court dismissed the contempt citation against Mother, finding that she had purged herself of contempt. The court issued a bench warrant for Father's arrest and suspended his visitation privileges.

On January 21, 1999, an order was entered by the Oklahoma court, which order purported to be the result of a hearing conducted on July 24, 1998, ostensibly on a motion filed by Father to clarify the court's January 3, 1997, order. In this January 21, 1999, order, the Oklahoma court addressed the issue it had previously reserved, *i.e.*, whether Father was entitled to a credit for Social Security payments made to Mother for the benefit of the child. The court found that Father was entitled to "full credit" against his child support obligation for these payments, a finding which appears to have absolved Father of any child support arrearage as of the date of that hearing.

In February, 1999, Mother filed a motion in Oklahoma to vacate the January 21, 1999, order, arguing (1) that the records of the Oklahoma court did not reflect that a hearing actually occurred on July 24, 1998, and (2) that the January 21, 1999, order was entered without notice to her. In March, 1999, Father domesticated the challenged January 21, 1999, Oklahoma order in California. In April, 1999, Father filed a petition to change custody in California. Mother filed a *pro se*

response challenging California's jurisdiction and requesting an order recognizing Tennessee as the child's home state. While the California proceeding was pending, in May, 1999, Mother filed the subject petition in the Knox County Circuit Court ("the trial court"), seeking the following relief: (1) a declaratory judgment that Tennessee was the home state of the child; (2) a declaratory judgment that the Oklahoma court's order of January 21, 1999, was not entitled to full faith and credit; (3) a declaratory judgment that California lacked subject matter jurisdiction to adjudicate the custody of the child; (4) domestication of foreign judgments relating to the custody, visitation, and support of the minor child[1]; (5) modification of the foreign orders so as to limit Father's visitation with the child to supervised visits in the state of Tennessee; (6) a temporary injunction prohibiting Father from exercising visitation with the child except with supervision and within the state of Tennessee; (7) an order requiring Father to undergo an alcohol assessment; and (8) an award of attorney's fees. Mother's petition was sent to Father's address in California by registered mail, return receipt requested. It was returned to Mother's attorney, marked "refused."

On June 17, 1999, the Oklahoma court vacated its earlier January 21, 1999, order. It found that Tennessee was the child's home state and transferred all matters pertaining to custody and visitation to the trial court. Meanwhile, in an order entered July 2, 1999, the California court awarded joint custody of the child to the parties, with physical custody to Father. Mother was ordered to pay child support. There is no indication that the California court was ever notified that the Oklahoma court had vacated its January 21, 1999, order. The vacated order was the one that Father had sought to domesticate in California, the proceeding that led to the California order awarding Father physical custody.

Mother filed a motion for default judgment in the trial court on August 3, 1999. On September 8, 1999, two days before the scheduled date of the default judgment hearing, Father filed in Knox County Juvenile Court a motion for domestication, registration, and enforcement of an order from the California court directing the Knox County Sheriff's Department to take the child and hand him over to Father.[2] The California order was domesticated by the Juvenile Court the same day. Based upon that order, officers from the Knox County Sheriff's Department and a private investigator arrived at the child's school. Before they could retrieve the child, however, an attorney for the school system advised the Juvenile Court that the subject action was pending in the trial court, and the Juvenile Court immediately set aside its domestication order.

At approximately 10 p.m. on September 9, 1999, Father sent a facsimile to the trial court,

---

[1]Specifically, Mother sought to domesticate (1) the order of the Ohio juvenile court entered August 28, 1986, awarding custody of the child to Mother; (2) the order of the Ohio juvenile court entered September 1, 1987, setting Father's child support obligation and awarding him visitation; (3) the order of the Oklahoma court entered January 3, 1997, finding both parties in contempt and setting Father's visitation; and (4) the order of the Oklahoma court entered December 30, 1996, dismissing the contempt charge against Mother, issuing a bench warrant for Father, and suspending his visitation with the child.

[2]At the time of this filing, Father's attorney was unaware of the pending action in the trial court.

requesting a continuance of the default judgment hearing in order that he might have additional time to retain an attorney. The hearing proceeded as scheduled the next day, and a default judgment against Father was entered. In its order, the trial court: (1) found that Tennessee was the home state of the child; (2) found that the Oklahoma court's order of June 17, 1999, vacating its January 21, 1999, order rendered moot the issue of whether the latter order was entitled to full faith and credit; (3) found that the California court lacked subject matter jurisdiction to adjudicate issues pertaining to the child's custody and visitation; (4) domesticated the foreign judgments from Ohio and Oklahoma; (5) held that custody of the child should remain with Mother; (6) limited Father's visitation with the child to supervised visits in the state of Tennessee; (7) ordered Father to undergo an alcohol assessment as a condition precedent to more expanded visitation; and (8) awarded Mother $7,390.58 in attorney's fees "[a]s an incident of child support."

Within 30 days of the entry of the default judgment, Father's attorney filed a notice of appearance "for the purpose of contesting jurisdiction" and a motion to set aside the default judgment. The motion also sought the dismissal of Mother's complaint. Following a hearing, at which Father's attorney unsuccessfully made an oral motion to allow Father to participate by telephone, the trial court denied Father's motion to set aside the default judgment. Father appeals, raising nine issues, which we restate as follows:

> 1. Did the trial court err in finding that it had subject matter jurisdiction of this matter under the Uniform Child Custody Jurisdiction Act?[3]
>
> 2. Did the trial court err in finding that it had *in personam* jurisdiction over Father?
>
> 3. Did the trial court err in finding that Knox County, Tennessee, was the proper venue to hear matters touching upon the care, custody, and visitation of the minor child?
>
> 4. Did the trial court err in finding that service of process had been properly effected upon Father?
>
> 5. Did the trial court violate Father's constitutionally-protected fundamental right to parent his son by proceeding with a hearing regarding that right after receiving a facsimile from Father asking for a continuance?
>
> 6. Did the trial court abuse its discretion in not allowing Father to paraticipate at the default judgment hearing by telephone?

---

[3]T.C.A. § 36-6-201 *et seq.* (1996) (repealed 1999).

7. Did the trial court abuse its discretion in denying Father's motion to set aside the default judgment and in denying Father's request for 30 additional days to respond?

8. Did the trial court abuse its discretion in modifying the Oklahoma visitation order by ordering that all visits between Father and the minor child be supervised?

9. Did the trial court err in granting Mother attorney's fees as an incident of child support?

Mother seeks her attorney's fees incurred on this appeal. The Attorney General has filed a brief in defense of the constitutionality of Tenn. R. Civ. P. 4.05(5).

## II. *Uniform Child Custody Jurisdiction Act*

Father raises several issues – subject matter jurisdiction, *in personam* jurisdiction, venue, and service of process – that implicate, at least in part, Tennessee's version of the Uniform Child Custody Jurisdiction Act (which version is referred to herein as "the UCCJA"), T.C.A. § 36-6-201 *et seq.* (1996) (repealed 1999), which was in effect at the time Mother filed the subject petition in the trial court.[4] We will first address the issues implicating the UCCJA.

## A. Subject Matter Jurisdiction

As a threshold issue, we must determine whether the trial court had jurisdiction to address custody and visitation issues in this case. Under the UCCJA, a Tennessee court may not modify the custody decree of another state unless two conditions are met:

> (1) It appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this part or has declined to assume jurisdiction to modify the decree; and
> (2) The court of this state has jurisdiction.

T.C.A. § 36-6-215(a). It is clear that the trial court properly modified the Oklahoma decree. In its June 17, 1999, order, the Oklahoma court declared Tennessee to be the child's home state and transferred all matters pertaining to the child's custody and visitation to the trial court. Thus, "the court which rendered the decree...declined to assume jurisdiction" over the matter. *Id*. Moreover, we find that the trial court had jurisdiction. A Tennessee court has jurisdiction to make a "custody

---

[4]The UCCJA was subsequently replaced by the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), effective June 14, 1999. *See* 1999 Tenn. Pub. Acts ch. 389.

determination" if Tennessee is the "home state" of the child at the time of the commencement of the proceeding.[5] T.C.A. § 36-6-203(a)(1)(A). A "custody determination" is defined as "a court decision and court orders and instructions providing for the custody of a child, including visitation rights." T.C.A. § 36-6-202(2). The "home state" of the child is defined as "the state in which the child immediately preceding the time involved lived with such child's parents, a parent or a person acting as parent, for at least six (6) consecutive months...." T.C.A. § 36-6-202(5). The child resided in Tennessee for nearly three years prior to the filing of Mother's petition in Tennessee. Thus, Tennessee had jurisdiction to make a custody determination in the instant case because this state was the child's "home state" at the relevant time, *i.e.*, "immediately preceding the time involved." *Id*. The "time involved" is "at the time of the commencement of the proceeding," *i.e.*, when Mother filed her petition in the trial court. T.C.A. § 36-6-203(a)(1)(A).

Father argues, however, that the trial court was precluded from exercising its jurisdiction because, so the argument goes, the California court had already properly exercised jurisdiction before Mother filed her petition in Tennessee. He cites T.C.A. § 36-6-207(a), which provides as follows:

> A court of this state shall not exercise its jurisdiction under this part if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this part, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

We hold that Tennessee was not precluded from exercising its jurisdiction because, although there was a proceeding pending in California at the time Mother filed her petition in Tennessee, the California court was not "exercising jurisdiction substantially in conformity with this part." Under the California version of the UCCJA, a California court has jurisdiction to make a child custody determination if any one of the following conditions are met:

> (1) This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of removal or retention by a person claiming custody of the child or for other reasons, and a parent or person acting as parent continues to live in this state.
> *(2) It is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial*

_____

[5]Subsection (a) contains other bases of jurisdiction that are not relevant to the facts of this case.

*evidence concerning the child's present or future care, protection, training, and personal relationships.*

(3) The child is physically present in this state and (A) the child has been abandoned or (B) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent. For the purposes of this subdivision, "subjected to or threatened with mistreatment or abuse" includes a child who has a parent who is a victim of domestic violence, as defined in Section 6211.

(4) Both of the following conditions are satisfied:

(A) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2), or (3) or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child.

(B) It is in the best interest of the child that this court assume jurisdiction.

Cal. Fam. Code § 3403(a) (1994) (repealed 1999) (emphasis added).[6]

Father argues that California properly exercised jurisdiction on the basis of a "significant connection." *See* Cal. Fam. Code § 3403(a)(2). Mother, on the other hand, argues that California case law interpreting this provision does not support such a result.

In the case of ***Newsome v. Newsome (In re Marriage of Newsome),*** 80 Cal. Rptr. 2d 555 (Cal. Ct. App. 1998), a case cited by Mother, the parties lived in California with their children from 1989 to 1993, when the mother moved with the children to Texas. ***Id***. They lived in Texas for over three years before the father filed for divorce and sought custody of the children in California. ***Id.*** During those three years, the father never visited the children in Texas, and they never visited him in California. ***Id.***

The California Court of Appeals concluded that California's version of the UCCJA did not permit a California court to assert jurisdiction on the basis of a significant connection because Texas was the home state of the children. It further found that the California version of the UCCJA "gives preference to home state jurisdiction." ***Id.*** at 561. The court went on to hold that even if there was no preference under the UCCJA for home state jurisdiction, the evidence would not support a finding of a significant connection between the children and California sufficient to establish jurisdiction:

---

[6]The California version of the UCCJA was also replaced by a version of the UCCJEA in 1999. *See* 1999 Cal. Stat. ch. 867.

Under the significant connection test, a California court may assume jurisdiction only if it is in the best interest of the child, a conclusion which cannot be reached unless it is demonstrated the child and at least one parent have a significant connection with this state and that there is available in California substantial evidence concerning the child's care and relationships with others. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state.

Moreover, the best interest language was not intended to be an invitation to address the merits of the custody dispute in the context of the jurisdictional determination. Rather, the court's inquiry is limited to the determination of whether it is in a better position than another court to decide the merits of the case and thus serve the best interest of the child. Thus, the normal preference is for adjudicating custody disputes in the home state where the children live, where the most evidence of their daily living conditions will be found, where the continuity and stability of their parental relationship and their daily routines will be least disrupted by the legal procedure.

*Id.* at 561 (citations and internal quotation marks omitted). The California appellate court found that "[o]ther than the fact that their father still resided in California, there was no other connection between the children and California" at the time the father commenced the divorce proceeding. *Id.* at 562. The court further found "the bulk of the relevant information, if not all information, relating to the children, their family relationships, their schooling, friends, and their future care, protection and training was in Texas." *Id.* The court therefore concluded that because "there were maximum, as opposed to minimum, contacts with the state of Texas," the California court lacked jurisdiction over the issue of child custody. *Id.*

Like *Newsome*, the child in the instant case has never lived in California. He has not visited Father there since November, 1996. Indeed, the only connection the child has with California is that his father lives there. Most, if not all, of the relevant information relating to the child is in Tennessee. We therefore conclude that California lacked a significant connection upon which it could assert jurisdiction. Accordingly, the trial court correctly found the California court's order of July 2, 1999, granting custody to Father was not entitled to full faith and credit. *See Atchley v. Atchley,* 585 S.W.2d 614, 617 (Tenn. Ct. App. 1978) ("Article IV, Section I [of the United States Constitution] does not require a state to give full faith and credit to a judgment which is void for lack of jurisdiction.").

Even if California could properly exercise "significant connection" jurisdiction, the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A (1994 and Supp. 2000) ("PKPA"), mandates that

Tennessee, not California, has jurisdiction in this case. Section (c) of the PKPA states, in pertinent part, as follows:

> A child custody determination made by a court of a State is consistent with the provisions of this section only if –
> (1) such court has jurisdiction under the law of such State; and
> (2) one of the following conditions is met:
> (A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;
> (B) *(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships....*

(Emphasis added). Under the PKPA, it is apparent that California may exercise significant connection jurisdiction only if *no other state has home state jurisdiction. See* 28 U.S.C. § 1738A(c)(2)(B). It is clear that, at the time of the commencement of the proceeding in California, Tennessee was the home state of the child and therefore had "home state" jurisdiction. Accordingly, we find and hold that the trial court was correct in its dual findings, *i.e.*, that it had subject matter jurisdiction over Mother's petition and that the California court did not have such jurisdiction when the latter court purported to establish a custodial arrangement regarding the child. Father's argument to the contrary is found to be without merit.

### B. *In Personam* Jurisdiction

Father next argues that, as to the issues of custody and visitation, the minimum contacts necessary to establish *in personam* jurisdiction over him are not present in this case. Under the UCCJA, however, a Tennessee court may exercise personal jurisdiction over a non-resident parent despite that parent's lack of minimum contacts with Tennessee. ***Brown v. Brown***, 847 S.W.2d 496, 499 n.2 (Tenn. 1993); ***Roderick v. Roderick***, 776 S.W.2d 533, 535-36 (Tenn. Ct. App. 1989). As we recently stated in ***Graham v. Copeland (In re Adoption of Copeland)***, C/A No. E1999-01514-COA-R3-CV, 2000 WL 336665, at *3 (Tenn. Ct. App. E.S., filed March 30, 2000):

> Generally, a state may not exercise personal jurisdiction over a non-resident party unless that party has minimum contacts with the state.

> *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945). The Supreme Court has not mandated, however, that every jurisdictional analysis include this minimum contacts requirement. In *Shaffer v. Heitner,* 433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977), the Court stated that the rationale of *International Shoe Co.* was not meant to "suggest that jurisdictional doctrines other than those discussed in text, such as the particularized rules governing adjudication of status, are inconsistent with the standard of fairness." *Id.*, 433 U.S. at 208 n. 30, 97 S. Ct. at 2582 n. 30.
>
> We have held that "[c]ases involving the custody of children are precisely the type of 'status' cases...alluded to in *Shaffer v. Heitner*." *Fernandez v. Fernandez,* 1986 WL 7935, *2 (Tenn. Ct. App. M.S., filed July 15, 1986). *See also Warwick v. Gluck,* 751 P.2d 1042, 1045 (Kan. Ct. App. 1988) ("custody is in effect an adjudication of a child's status, which falls under the status exception of *Shaffer v. Heitner*"). Accordingly, we are persuaded that Tennessee courts may adjudicate child custody issues under the UCCJA even if one of the parents does not have minimum contacts with Tennessee. *See Fernandez,* 1986 WL 7935, at *1.

(Footnote omitted). Accordingly, we hold that the trial court properly exercised personal jurisdiction over Father in the matters related to custody and visitation.

### C. Venue

Next, Father argues that Knox County, Tennessee, was not the proper venue to hear matters relating to the custody and visitation of the child because, so the argument goes, California was the legal domicile of the child. Furthermore, he argues that Tennessee should have declined to exercise its jurisdiction on the basis that it was an inconvenient forum.

Father's first argument is premised upon an assertion that the California order granting him physical custody is a valid order. Hence, so the argument goes, the child's domicile is that of the person who has custody, *i.e.*, Father. Therefore, according to Father, the child's domicile is California. Because we have already found that the subject California order is not entitled to full faith and credit, we find that Father's argument is without merit.

We also find no merit in Father's argument that Tennessee is an inconvenient forum to adjudicate this case. T.C.A. § 36-6-208(a) provides that a court may decline to exercise jurisdiction "if it finds that it is an inconvenient forum to make a custody determination...and that a court of another state is a more appropriate forum." The factors a court must consider in determining if it is an inconvenient forum include:

-10-

(1) If another state is or recently was the child's home state;
(2) If another state has a closer connection with the child and family or with the child and one (1) or more of the contestants;
(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;
(4) If the parties have agreed on another forum which is no less appropriate; and
(5) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in § 36-6-201.

T.C.A. § 36-6-208(c).

In reviewing these factors, we conclude that the trial court did not err in exercising jurisdiction in this case. California has never been the child's home state. As discussed previously, California obviously does not have a closer connection with the child than does Tennessee. Moreover, because the child has resided in Tennessee since July, 1996, most, if not all, of the relevant information pertaining to his care, protection, training, and personal relationships is present in the state of Tennessee. Finally, we do not find that an exercise of jurisdiction in this case would contravene any of the stated purposes of the UCCJA. This issue is found adverse to Father.

## D. Service of Process

Father argues that service of process was not properly effected upon him. Curiously, he relies upon Tenn. R. Civ. P. 4.04(10), which provides for service by mail on defendants *within the state*. In particular, he calls our attention to the following language of Rule 4.04(10): "[s]ervice by mail shall not be the basis for the entry of a judgment by default unless the record contains a return receipt showing personal acceptance by the defendant...." Because he did not personally accept service, Father argues that service of process was invalid.

Mother, on the other hand, correctly points out that service of process on a defendant *outside* of Tennessee is deemed actual and valid if "the addressee or the addressee's agent[] refuses to accept delivery, and it is so stated in the return receipt of the United States Postal Service," and the written return receipt is returned and filed in the action. *See* Tenn. R. Civ. P. 4.05(5). The record reflects that the summons and the complaint with respect to Mother's action in the trial court were mailed to Father's address and were returned to Mother's attorney. The process server indicated on the summons that the summons and complaint were served "registered, return receipt requested mail returned stamped refused – see attached." Accordingly, we find that service of process was valid.

Father argues that Rule 4.05(5) "is unconstitutionally violative of his rights under both the Fifth and Fourteenth Amendments of the United States Constitution." He cannot raise this argument on appeal for two reasons: first, it was not raised below and, second, Father failed to advise the attorney general at the trial level that he intended to challenge the constitutionality of this particular

-11-

provision. When the constitutionality of a statute or a rule is challenged, a litigant must notify the Attorney General and provide him the opportunity to be heard at the trial level. T.C.A. § 29-14-107 (2000); Tenn. R. Civ. P. 24.04. A constitutional issue not raised below will not be considered on appeal unless the provision "is so obviously unconstitutional on its face as to obviate the necessity for any discussion." *Lawrence v. Stanford,* 655 S.W.2d 927, 929 (Tenn. 1983). Tenn. R. Civ. P. 4.05(5) is not "so obviously unconstitutional on its face" as to warrant consideration of this constitutional issue not raised below. The subject issue is without merit.

### III. *Request for Continuance*

Father argues that the trial court violated his constitutional rights when it proceeded with the default judgment hearing in the face of a facsimile from him asking for a continuance. A trial court has broad discretion in granting or denying a continuance, and we will not reverse such a decision unless the court abuses that discretion and causes prejudice to the party seeking the continuance. *Sanjines v. Ortwein and Assocs., P.C.,* 984 S.W.2d 907, 909 (Tenn. 1998). In his facsimile to the trial court, Father asserted that he had not been "served for Tennessee" and that he needed time to find an attorney. The record reflects, however, as we have already discussed, that Father had been properly served with process and had failed to respond within the required 30 days. Moreover, there is no indication in the record as to why Father needed additional time in order to find counsel to represent him in this proceeding. We further note that Father's assertion that he needed more time is certainly suspect in light of the fact that Father had previously retained local counsel to file a motion to register and enforce the orders of the California court in the Knox County Juvenile Court. In light of these circumstances, we find no abuse of discretion in the trial court's decision to proceed with the hearing as previously scheduled and as previously noticed to Father.

### IV. *Request for Telephonic Appearance*

Father contends that the trial court abused its discretion in not allowing him to appear telephonically at the hearing on his motion to set aside the default judgment. Father asserts in his brief that he could not travel to Tennessee for medical reasons. Furthermore, he asserts that the court below "has conducted many hearings telephonically." Neither of these asserted facts, however, are supported by evidence in the record. Even if the record did support Father's assertions, however, we would not be inclined to say that the trial court abused its discretion in not allowing Father to participate in the hearing by telephone. *See State v. Cazes,* 875 S.W.2d 253, 260 (Tenn. 1994) ("It is well-established that a trial judge has broad discretion in controlling the course and conduct of the trial...."). We also note that Father was represented by counsel at the hearing on his motion to set aside default judgment. Father's argument is found to be without merit.

### V. *Motion to Set Aside Default Judgment*

Father contends that the trial court abused its discretion in denying his motion to set aside the default judgment.

When a motion to set aside a default judgment is filed within 30 days of the entry of the judgment, the motion is deemed one for a new trial under Tenn. R. Civ. P. 59, which affords relief because of mistake, inadvertence, surprise or excusable neglect. *Henson v. Diehl Machines, Inc.*, 674 S.W.2d 307, 310 (Tenn. Ct. App. 1984). Father's motion addresses itself to the trial court's sound discretion, and we will not disturb a trial court's ruling on such a motion absent an abuse of that discretion. *See id.*

Upon reviewing the record in this case and for the reasons we have already stated in this opinion, we cannot say that the trial court abused its discretion in declining to set aside the default judgment. This issue is found adverse to Father.

## VI. *Modification of Oklahoma Visitation Order*

Father argues that the trial court abused its discretion in modifying the Oklahoma visitation order and in limiting him to supervised visitation.

We cannot say that the trial court abused its discretion in modifying Father's visitation with the child. At trial, Mother expressed her concern that Father abused alcohol. She was also concerned that if Father had unsupervised visitation with the child that Father would take the child and not return him to her. The child testified that during his last visit with Father in California, he was frightened because he knew Father "had a gun, and I have seen his collection of alcohol, and he has a knife, and those are not good combinations, and I did not feel safe there." The trial court did not abuse its discretion in modifying Father's visitation. We affirm the trial court on this issue.

## VII. *Attorney's Fees*

Finally, Father argues that the trial court erred in awarding Mother her attorney's fees – in the court's words – "as an incident of child support."

As we have already discussed, the trial court's basis of power in this case, *i.e.*, jurisdiction, to make a custody determination is grounded in the UCCJA. However, the UCCJA cannot serve as a jurisdictional basis for an award of attorney's fees. The UCCJA expressly states that a "'[c]ustody determination' does not include a decision relating to child support or any other monetary obligation of any person." T.C.A. § 36-6-202(2). Thus, although a court can make a "custody determination" under the UCCJA despite a defendant parent's lack of minimum contacts with the forum state, *see Brown v. Brown*, 847 S.W.2d 496, 499 n.2 (Tenn. 1993), a trial court must have "minimum contacts" *in personam* jurisdiction before it can adjudicate a claim involving a parent's monetary obligations. *See Overby v. Overby*, 224 Tenn. 523, 526-27, 457 S.W.2d 851, 852 (1970) (requiring personal jurisdiction to adjudicate child support claim); *Roderick v. Roderick*, 776 S.W.2d 533, 535 (Tenn. Ct. App. 1989) (same); *see also In re Marriage of O'Connor*, 690 P.2d 1095, 1097 (Or. Ct. App. 1984) ("Without some act by the nonresident spouse which confers personal jurisdiction over him, such as consent or a general appearance in the action, the court may not enter an order affecting

that spouse's monetary obligations or rights."). We must therefore determine whether the trial court properly exercised *in personam* jurisdiction over Father in awarding attorney's fees to Mother.

Under the Federal Constitution, a defendant who is a non-resident may be subjected to a money judgment only if he or she has "minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." ***International Shoe Co. v. Washington***, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (internal quotation marks omitted); ***Masada Inv. Corp. v. Allen***, 697 S.W.2d 332, 334 (Tenn. 1985). *See also* T.C.A. § 20-2-214(a) (1994), the Tennessee Long Arm Statute. The "minimum contacts" test is a two-step analysis:

> First, it requires the court to identify the contacts between the non-resident and the forum. Second, it requires the court to determine whether exercising personal jurisdiction based on these contacts is consistent with traditional notions of fair play and substantial justice. Both steps call for a careful, not mechanical, analysis of the facts of each case with particular focus on the defendant, the forum, and the nature of the litigation.
>
> The first step of the analysis is primarily a fact-gathering exercise. The second step involves some subjective value judgment by the court concerning the quality and nature of the defendant's contacts with the forum and the fair and orderly administration of the law. The court's judgment should be informed by considering, among other matters: the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the judicial system's interest in obtaining the most efficient resolution of controversies, and the state's shared interest in furthering fundamental, substantive social policies.

***Davis Kidd Booksellers, Inc. v. Day-Impex, Ltd.***, 832 S.W.2d 572, 575 (Tenn. Ct. App. 1992) (citations omitted). As stated by the United States Supreme Court:

> The application of [the minimum contacts] rule will vary with the quality and the nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

***Hanson v. Denckla***, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283 (1958).

The trial court found that it had *in personam* jurisdiction in this case "inasmuch as [Father] initiated an action in the Juvenile Court for Knox County, Tennessee on 8 September 1999, against

-14-

[Mother] regarding the same subject matter." We find and hold that the trial court was correct in finding that Father's conduct created minimum contacts sufficient to exercise personal jurisdiction in this case. Father sought to register and enforce orders of the California court awarding him physical custody of the child and *ordering Mother to pay child support.* By so doing, Father purposefully availed himself of the benefits and protections of Tennessee law. Those laws include T.C.A. § 36-5-103(c), which authorizes an award of fees to a custodial parent who is required to file or defend an action pertaining to the custody or support of a minor child. When the trial court decreed an award of attorney's fees, it did so only after Father established minimum contacts with the state of Tennessee. Furthermore, we do not find that an exercise of jurisdiction in this case would be impermissibly burdensome upon Father, when he has already chosen to avail himself of the Tennessee court system by seeking to enforce a custody and support order from a foreign jurisdiction. We therefore find that the trial court's exercise of *in personam* jurisdiction over Father does not offend the "traditional notions of fair play and substantial justice" contemplated by *International Shoe*.

Mother also seeks her attorney's fees incurred on this appeal. We find that she is entitled to such an award and therefore remand this case to the trial court for a determination of a reasonable fee. *See D v. K,* 917 S.W.2d 682, 687 (Tenn. Ct. App. 1995) (on petition for rehearing).

VIII. *Conclusion*

The judgment of the trial court is in all respects affirmed. Costs on appeal are taxed to the appellant. This case is remanded for a determination of an award to Mother of her attorney's fees incurred on this appeal, for enforcement of the judgment, and for collection of costs assessed below, all pursuant to applicable law.

_____
CHARLES D. SUSANO, JR., JUDGE